# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1785

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Arlen Jourdain, also known as | * | |
| "Oatse," | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 11, 2005
Filed: January 10, 2006 (corrected February 17, 2006)

_____

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Arlen Jourdain (Jourdain) was convicted by a jury of aiding and abetting an assault resulting in serious bodily injury. Following the verdict, the district court[1] denied Jourdain's motion for judgment of acquittal and sentenced him to 48 months' imprisonment and 3 years' supervised release. Jourdain appeals. Finding no errors, we affirm.

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

## I.    BACKGROUND

On July 1, 2002, a growing animosity between Clayton Cobenais (Cobenais) and three men, including Jourdain, culminated in the shooting and death of Cobenais. On that day, beginning around 10:00 a.m., Jourdain, his first cousin Harry Desjarlait (Desjarlait), and Duane Maxwell (Maxwell) spent the day cruising together in Maxwell's car around the Red Lake Indian Reservation in northern Minnesota, drinking alcohol and smoking marijuana. Maxwell drove the vehicle, Desjarlait sat in the front passenger seat, and Jourdain sat in the backseat. Maxwell's .22 caliber rifle was located in plain view in the vehicle's passenger compartment.

Jourdain, Desjarlait, and Maxwell were close friends and considered themselves like brothers. They were not so close, however, to Cobenais, who was Jourdain's and Desjarlait's cousin. Rather, the trio had a hostile relationship with the victim. Desjarlait had engaged in one physical fight and over ten arguments with Cobenais. Maxwell believed Cobenais rear-ended Maxwell's girlfriend's car a few weeks before the shooting, causing her to break her collarbone. Maxwell threatened to kill Cobenais. Approximately four days before Cobenais was murdered, Cobenais threatened Jourdain and his friends with a rifle.

Alan Matrious (Matrious), a cousin of Jourdain, accompanied the trio for part of the day on July 1. During that time, Jourdain and the other men solicited Matrious to shoot another man. Around 5:30 p.m., the trio took Matrious home because Matrious was drunk. The remaining three men continued to cruise together. At about 9:00 p.m., the trio encountered Cobenais walking in the opposite direction on the other side of the street. Upon seeing Cobenais, Maxwell made a u-turn and pulled his car onto the shoulder of the road alongside Cobenais. Jourdain and Desjarlait both jumped out of the car, confronted Cobenais, and "had words." Maxwell remained in the car and fired his rifle approximately six times, hitting Cobenais once in the stomach, once in the forearm, and twice in the chest.

Albert Lussieur (Albert), an elderly neighbor to Cobenais, witnessed part of the incident from his yard on the opposite side of the street, although his view was slightly obstructed by trees and by the angle of Maxwell's car. Upon hearing yelling and gunshots, Albert started running toward the group. Jourdain and Desjarlait ran from Cobenais and jumped back into Maxwell's car. As the men fled the scene, Jourdain waved his arm out the car window and "war whoop[ed]." When Albert reached Cobenais, he was face-down and taking "big breaths."

Miriam Lussieur (Miriam) heard the gunshots and was alerted to the incident by her six-year-old grandson, R.A. Miriam telephoned "911" and noticed Cobenais was still "moving around." R.A. witnessed the incident while looking out a window facing the street, and he told his grandmother he recognized his dad's friends and that Desjarlait had shot Cobenais. Although R.A. knew Jourdain, he did not mention Jourdain to Miriam. Cobenais died in Miriam's yard.

After the trio fled the scene, they discarded the rifle in a lake, left Maxwell's car at a friend's home, and received a ride to another friend's home. There, Maxwell confessed to killing Cobenais. On July 2, 2002, Maxwell was arrested and released. He later committed suicide. On July 2, Jourdain and Desjarlait went to the Beltrami County Law Enforcement Center. When Jourdain was asked why he was there, Jourdain responded he was "turning [him]self in" because he was "involved."

On October 11, 2002, Desjarlait pled guilty to the second-degree murder of Cobenais. Desjarlait later testified before a federal grand jury investigating Cobenais's murder and again at Jourdain's trial. During direct examination at Jourdain's trial, using both Desjarlait's plea colloquy and grand jury testimony, the government elicited testimony from Desjarlait that both he and Jourdain exited Maxwell's car on July 1, 2002; that he exited the car intending to assault Cobenais; and that, although Jourdain did not discuss attacking Cobenais, when the men saw Cobenais, their minds "click[ed] together."

On October 21, 2003, Jourdain was indicted for (1) conspiring to commit assault resulting in death and serious bodily injury, (2) aiding and abetting murder, (3) aiding and abetting assault resulting in serious bodily injury, and (4) aiding and abetting the discharge of a firearm during a crime of violence. The district court dismissed Count 4 at the close of the prosecution's case. The jury acquitted Jourdain of Counts 1 and 2, but found him guilty with respect to aiding and abetting assault resulting in serious bodily injury. After determining the base offense level for aggravated assault, the court applied two Sentencing Guidelines enhancements for (1) discharge of a firearm, and (2) permanent and life-threatening injury. The court then sentenced Jourdain to 48 months' imprisonment.

Jourdain appeals, asserting (1) the evidence is insufficient to support his conviction, (2) the district court erred in imposing enhancements for discharge of a firearm and the degree of injury, and (3) the district court violated Federal Rule of Evidence 404(b) in admitting evidence concerning Jourdain's alleged solicitation of Matrious to shoot another man.

## II.    DISCUSSION
### A.    Sufficiency of the Evidence

Jury verdicts are not overturned lightly. See United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991) (citing United States v. Knife, 592 F.2d 472, 475 (8th Cir. 1979)). We will reverse the jury's verdict for insufficient evidence "only if no reasonable jury could have found [Jourdain] guilty beyond a reasonable doubt." United States v. Henderson-Durand, 985 F.2d 970, 975 (8th Cir. 1993) (citation omitted). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." United States v. Baker, 98 F.3d 330, 338 (8th Cir. 1996) (citation omitted). In doing so, we view the evidence in the light most favorable to the jury's verdict, resolving any evidentiary conflicts in the government's favor. United States v. Lee, 356 F.3d 831, 836 (8th Cir. 2003) (citation omitted).

To support a conviction for aiding and abetting assault, the defendant's mere presence or acquiescence in the crime itself is insufficient. See United States v. Thomas, 469 F.2d 145, 147 (8th Cir. 1972) (citations omitted). Rather, "there must exist some affirmative participation which at least encourages the perpetrator." Id. Jourdain contends no reasonable jury could have found him guilty because the government failed to prove Jourdain participated in any assault of Cobenais, and argues Jourdain's mere presence at the scene of Cobenais's death is insufficient to expose him to criminal liability.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude the record belies Jourdain's assertions. The jury heard evidence concerning Jourdain's extremely close relationship to Desjarlait and Maxwell, as well as the trio's common dislike of, and previous confrontations with, Cobenais. On July 1, 2002, the three spent the day together in Maxwell's car in which Maxwell's .22 caliber rifle was in plain view. They unsuccessfully solicited Matrious to shoot another individual. Later, upon seeing Cobenais walking by himself, Maxwell pulled his car alongside Cobenais, allowing Jourdain and Desjarlait to exit the car and confront Cobenais. At trial, Desjarlait testified that, at the time he exited the car, he intended to assault Cobenais. Desjarlait testified before the grand jury, which testimony was read at trial, that Jourdain did not say anything regarding assaulting Cobenais because "it was probably like something on our minds to, you know, like click together." After being stopped by Jourdain and Desjarlait, Cobenais was shot by Maxwell. When the trio fled the scene, Jourdain waved his arm out the car window and "war whoop[ed]." Considered together, Jourdain's actions on July 1, 2002, constituted more than "mere presence." The evidence supports a reasonable inference Jourdain's affirmative participation encouraged and aided the shooting of Cobenais. See Thomas, 469 F.2d at 147.

The facts of Thomas support our conclusion. In Thomas, the two defendants and a third unidentified man came upon a pickup truck and sought a ride from the truck's owner. Id. The owner refused, and the unidentified man entered the truck,

pulled a gun on the owner, and hit him with the gun. One of the defendants pulled the owner from the truck. The defendants immediately jumped into the truck, and the unidentified man attempted to back over the owner lying on the ground. The trio then drove the truck toward town and abandoned the truck. Later, one defendant bragged how he held up a truck at gunpoint. The other defendant returned to the abandoned truck and removed gas from it. Id. In determining whether sufficient evidence existed to sustain the conviction for aiding and abetting robbery and assault with a dangerous weapon, the Thomas court held:

> [A]lthough neither defendant actually held the gun on the victim, the evidence is such that a reasonable inference can be made that they were both immediately nearby and fully condoned the actions of their companion and assailant. The jury could also logically infer that the physical presence of the defendants was intimidating to the victim and thereby encouraged or stimulated the unidentified [man] to proceed in the assault and robbery.

Id. Thus, the court sustained the defendants' convictions. Id. at 148.

In support of his position, Jourdain cites United States v. Grey Bear, 828 F.2d 1286 (8th Cir. 1987), rev'd sub nom. on other grounds United States v. Cavenaugh, 948 F.2d 405 (8th Cir. 1991). The Grey Bear court found insufficient evidence supported a conviction for assault resulting in serious bodily injury for one of the defendants, Maynard Dunn (Dunn). Id. at 1295-96. The court rejected the argument Dunn could have implicitly encouraged the other defendants to attack the victim, "[g]iven the lack of any context in which [Dunn's] alleged punch was thrown . . . and Dunn's statement . . . that he did not want to get involved." Id. at 1295. Contrary to Grey Bear, however, the facts of this case demonstrate more than mere presence at the crime scene or association with the other assailants. While Jourdain may not have pulled the trigger, a jury reasonably could conclude–after considering Jourdain's actions before, during, and after the shooting–that Jourdain was involved and fully condoned his friends' actions, that his physical presence and confrontation of

Cobenais intimidated Cobenais, and that Jourdain's involvement encouraged Maxwell to shoot Cobenais.[2] See Thomas, 469 F.2d at 147. A reasonable jury also could find Jourdain participated and aided in stopping Cobenais and lining Cobenais up for the shooting.

Jourdain further contends the government failed to prove Cobenais suffered "serious bodily injury" because Cobenais died from the gunshot wounds he sustained and there was no separate assault. We disagree. "Serious bodily injury" is defined in 18 U.S.C. § 1365(h)(3)[3] and includes injury involving (1) a substantial risk of death, or (2) extreme physical pain. 18 U.S.C. § 1365(h)(3)(A), (B). After the shooting, when Albert arrived at Cobenais's side, Cobenais was alive, taking deep breaths, and moving around. Because there is sufficient evidence that, as the government puts it, "Cobenais' death was neither instant nor painless," we conclude Cobenais obviously suffered "serious bodily injury" within the meaning of section 1365(h)(3).

Cobenais received four gunshot wounds: two to his upper chest, one to his stomach, and one defensive wound to his left forearm, which often occurs when a person raises his arms to defend himself from attack. Further, Cobenais was breathing when Jourdain fled the scene and still was moving when "911" was called. Cobenais then bled to death, dying from "[e]xsanguination, or hemorrhage, due to multiple

---

[2]Although, as Jourdain points out, the evidence contains some inconsistencies regarding Jourdain's precise role in the assault, the inconsistencies do not dictate a contrary result, for "[t]he resolution of any such inconsistencies and contradictions is left to the jury." United States v. Crow Dog, 532 F.2d 1182, 1195 (8th Cir. 1976). "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." Burks, 934 F.2d at 151 (citing Knife, 592 F.2d at 475).

[3]Title 18 U.S.C. § 113 prohibits assault resulting in serious bodily injury and refers to 18 U.S.C. § 1365(h)(3) for the relevant definition of "serious bodily injury." See 18 U.S.C. § 113(a)(6), (b)(2).

gunshot wounds." From these facts, the jury reasonably could conclude Cobenais sustained "serious bodily injury" within the meaning of section 1365(h)(3) prior to his death.[4] See United States v. Two Eagle, 318 F.3d 785, 791 (8th Cir. 2003) (stating "whether an injury is serious presents a question of fact for the jury"). Accordingly, we reject Jourdain's claim of error on this issue.

## B.    Sentencing Guidelines Enhancements

Jourdain next argues the district court erred when it applied two enhancements to his base offense level for (1) discharge of a firearm and (2) permanent or life-threatening bodily injury. We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings regarding enhancements for clear error. United States v. Noe, 411 F.3d 878, 888 (8th Cir. 2005) (citation omitted).[5]

The Guidelines authorize holding defendants responsible for "all reasonably foreseeable acts . . . of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense." U.S.S.G. § 1B1.3(a)(1)(B). In aggravated assault cases, a five-level enhancement is applied for the discharge of a firearm. U.S.S.G. § 2A2.2(b)(2)(A). Jourdain contends the firearm enhancement was applied erroneously because he was not involved in the shooting and the use of the firearm was not foreseeable to him. We disagree. The .22 caliber rifle was visible in the passenger compartment in the car in which Jourdain was riding. A few hours

---

[4]Our holding is limited to those cases in which there is sufficient evidence to support a jury's conclusion the victim suffered "serious bodily injury" before his death. Thus, we do not reach the broader question of whether all injuries resulting in another person's death, even "instantaneous" death, necessarily constitute "serious bodily injury" under 18 U.S.C. §§ 113 and 1365(h)(3).

[5]We need not review whether Jourdain's sentence is reasonable in light of 18 U.S.C. § 3553(a) because Jourdain has not challenged the reasonableness of his sentence. Jourdain challenges only the district court's application of the Sentencing Guidelines.

before Cobenais's murder, Jourdain unsuccessfully solicited Matrious to shoot another man. Jourdain and his close friends had a history of hostility toward Cobenais. The shooter, Maxwell, a few weeks before the shooting, threatened to kill Cobenais. When the trio encountered Cobenais walking alone, Jourdain jumped out of the vehicle with Desjarlait, confronted Cobenais, and after the shooting, "war whoop[ed]" as the three fled the scene. Because there is sufficient evidence the use of the firearm was reasonably foreseeable to Jourdain, we conclude the district court properly applied the five-level enhancement for the discharge of a firearm pursuant to U.S.S.G. §§ 1B1.3(a)(1)(B) and 2A2.2(b)(2)(A).

We reach the same conclusion with regard to the district court's application of the five-level enhancement pursuant to U.S.S.G. § 2A2.2(b)(3)(C) for degree of bodily injury.[6] Although Cobenais ultimately died from the gunshot wounds he sustained, it does not follow that he did not sustain permanent or life-threatening bodily injury within the meaning of the Sentencing Guidelines. For similar reasons as discussed previously, sufficient evidence exists to show the gunshot wounds Cobenais sustained caused him permanent or life-threatening bodily injury separate and apart from his subsequent death. Thus, we conclude the district court properly applied this enhancement as well.

### C.    Admission of Rule 404(b) Evidence

Finally, Jourdain contends the district court erred in admitting Rule 404(b) evidence that before Cobenais's murder Jourdain and his friends solicited Matrious to shoot another man, arguing the evidence was not relevant, was not proven by a preponderance of the evidence, and was overly prejudicial. Rule 404(b) provides

---

[6]U.S.S.G. § 2A2.2(b)(3)(C) provides for a seven-level enhancement. However, cumulative adjustments from the application of U.S.S.G. § 2A2.2(b)(2)(A), the firearm enhancement, and U.S.S.G. § 2A2.2(b)(3), the degree of bodily injury enhancement, cannot exceed ten levels. See U.S.S.G. § 2A2.2(b). Because the district court imposed a five-level enhancement for the discharge of a firearm, any enhancement for degree of bodily injury could not exceed five levels.

evidence of other crimes or wrongs is admissible to prove "intent, . . . knowledge, . . . or absence of mistake or accident." Fed. R. Evid. 404(b). It is a rule of inclusion, not exclusion. United States v. Loveless, 139 F.3d 587, 591 (8th Cir. 1998). "In order for evidence of prior bad acts to be admissible, the evidence must be: (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." Id. at 592 (citation omitted).

We review the district court's decision to admit Rule 404(b) evidence for an abuse of discretion. United States v. Tomberlin, 130 F.3d 1318, 1320 (8th Cir. 1997). "Giving great deference to the district court's determination in balancing the prejudicial effect and probative value of evidence of other crimes or acts, we will reverse the district court's evidentiary decision only when the evidence admitted clearly has no bearing on any issue involved." United States v. Claybourne, 415 F.3d 790, 797 (8th Cir. 2005) (internal quotation omitted).

We conclude the district court's decision to admit this evidence was not an abuse of discretion. First, the evidence was relevant to the issue of Jourdain's intent. See United States v. Johnson, 934 F.2d 936, 940 (8th Cir. 1991) (stating where intent and knowledge are material issues "evidence of other acts tending to establish [intent] is generally admissible") (citation omitted) (alteration in original). While Jourdain argues he was merely present when Cobenais was shot and killed, evidence that he and his companions solicited Matrious to shoot another man was relevant to establish (1) whether the men shared a joint criminal purpose, (2) whether Jourdain had knowledge of the violence potential of his buddies and a shooting was foreseeable to Jourdain, and (3) whether the shooting of Cobenais after Jourdain confronted Cobenais could have been a mistake or accident. Second, Matrious's testimony satisfied the requisite burden of proof to admit evidence of Jourdain's solicitation. See United States v. Yellow, 18 F.3d 1438, 1441 (8th Cir. 1994) (quoting United States v. Huddleston, 485 U.S. 681, 685 (1988)) ("Rule 404(b) evidence 'should be admitted if there is sufficient evidence to support a finding by the jury that the

-10-

defendant committed the similar act.'"). While Matrious's credibility was attacked at trial, it was the jury's duty to judge credibility and choose what evidence upon which to rely. See United States v. Rosso, 179 F.3d 1102, 1107 (8th Cir. 1999). Finally, the probative value of this evidence outweighed its potential prejudicial effect. Accordingly, we find no error on this evidentiary issue.

## III.    CONCLUSION

For the foregoing reasons, we affirm Jourdain's conviction and sentence.

_____