# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2308

———————

United States of America,

        Appellee,

v.

Clinton B. Allen,

        Appellant.

Appeal from the United States
District Court for the Western
District of Missouri.

———————

Submitted: November 15, 2005
Filed: March 1, 2006

———————

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

———————

ARNOLD, Circuit Judge.

A jury convicted Clinton Allen of conspiring to distribute 5 grams or more of cocaine base, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(2), 846; possessing with intent to distribute 5 grams or more of cocaine base, *see* 21 U.S.C. § 821(a)(1), (b)(1)(B); and carrying a firearm during and in relation to a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A). The district court[1] sentenced him to 151 months' imprisonment on the drug counts, along with a 60-month consecutive sentence for the weapons count.

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Mr. Allen contends that the evidence presented at trial was insufficient to support the guilty verdicts. He also contends that the district court erred in calculating the amount of crack cocaine attributable to him for sentencing purposes. We affirm.

## I.

When considering the sufficiency of the evidence supporting a criminal conviction, we review the evidence in the light most favorable to the government and accept all reasonable inferences that support the jury's verdict. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). We will uphold the verdict if it is supported by substantial evidence, which is evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. "This standard of review is a strict one; we will not lightly overturn the jury's verdict." *Id.*

The jury found Mr. Allen guilty of conspiring to distribute 5 grams of cocaine base. To convict him of this charge, the government had to prove that there was a conspiracy to distribute crack cocaine, that Mr. Allen knew of the conspiracy, and that he knowingly joined and participated in it. *See United States v. Mendoza*, 421 F.3d 663, 668 (8th Cir. 2005). The government need not present direct evidence of the conspiracy; a jury may infer its existence from circumstantial evidence. *Id.*

Wesley Box testified at trial that Mr. Allen was among a group of people who regularly purchased crack cocaine from a local supplier, packaged it for sale in $10 increments, and sold it from an apartment where Mr. Box lived. Mr. Box said that those selling the drug from the apartment, including Mr. Allen, enlisted addicts to recruit customers and watch for the police. Mr. Box also testified that the participants agreed that if they were arrested, they would deny any knowledge of the activities at the apartment. A number of police officers testified to encounters that they had with Mr. Allen between 1999 and 2003 in which significant amounts of drugs or weapons were involved. Viewed in a light most favorable to the government, this evidence was

manifestly enough for a reasonable jury to find Mr. Allen guilty of conspiring to distribute crack cocaine.

We also believe that the evidence was sufficient to support Mr. Allen's convictions for possessing drugs with the intent to distribute them and for carrying a firearm. These charges stemmed from Mr. Allen's apprehension by the police after officers observed him driving a car that had been reported stolen. As the police turned their cruiser around to follow Mr. Allen, he drove through a stop sign. He then parked the vehicle and walked into a house. The police officers pursued Mr. Allen and convinced the occupants of the house to eject him. Upon his arrest, the officers impounded the vehicle. An inventory search of the car revealed a gun underneath the front passenger seat, a magazine with live ammunition between the two front seats, and a jacket on the driver's seat that contained a bag of 7.63 grams of crack cocaine, along with additional bags of marijuana and valium. Inside the vehicle's trunk, the police discovered clothing with a dry cleaning tag bearing Mr. Allen's name.

To convict Mr. Allen of possession with intent to distribute, the government was required to prove that he knowingly possessed a controlled substance and intended to distribute it. *United States v. Cawthorn*, 429 F.3d 793, 797-98 (8th Cir. 2005). A reasonable jury could have concluded that Mr. Allen knowingly possessed the crack found in the jacket pocket, based upon Mr. Allen's efforts to avoid the police officers who were following him, the location of the jacket on the driver's seat, and his exclusive control over the vehicle when the officers spotted him. *Cf. United States v. Hunter*, 95 F.3d 14, 16 (8th Cir. 1996).

Mr. Allen's challenge to his weapons conviction hinges on his assertion that *Bailey v. United States*, 516 U.S. 137 (1995), requires the government to prove that he carried the gun on his person in furtherance of drug trafficking. Section 924(c)(1)(A) provides, in relevant part, that "any person who, during and in relation

-3-

to any ... drug trafficking crime ... uses or carries a firearm ... shall, in addition to the punishment provided for such crime ... be sentenced to a term of imprisonment of not less than 5 years."  In *Bailey*, the Supreme Court held that the term "use" should be given its "ordinary or natural meaning," requiring proof that the defendant actively employed the firearm.  *Bailey*, 516 U.S. at 144-45 (internal quotations omitted).  The Court reasoned that a broader interpretation of "use" would have made the inclusion of "carry" unnecessary.  *Id.* at 145-46.  By way of example, the court noted that "a firearm can be carried without being used, *e.g.*, when an offender keeps a gun hidden in his clothing throughout a drug transaction."  *Id.* at 146.

Mr. Allen seizes upon this example and asserts that the government must show that he had physical contact with the weapon to prove that he "carried" it.  He fails, however, to acknowledge the decision in *Muscarello v. United States*, 524 U.S. 125 (1998) .  In *Muscarello*, the Supreme Court specifically considered the meaning of the term "carry" in § 942(c) and concluded that "the 'generally accepted contemporary meaning' of  the word 'carry' includes the carrying of a firearm in a vehicle."  *Id.* at 139; *see also Bradshaw v. United States*, 153 F.3d 704, 706 (8th Cir. 1998).  A reasonable jury could have concluded from the evidence presented at trial that Mr. Allen carried the weapon in the stolen car during and in relation to a drug-trafficking crime.

## II.

Mr. Allen also appeals the 181-month sentence that he received on the drug charges.  Although Mr. Allen contends that his sentence was unreasonable under the principles outlined in *United States v. Booker*, 543 U.S. 220, 260-65 (2005), his challenge is based solely on the district court's calculation of the amount of crack cocaine attributable to him; the court used this amount to compute Mr. Allen's sentencing range under the advisory federal sentencing guidelines.  We review a district court's calculation of drug quantity for clear error.  *United States v. Vinton*,

-4-

429 F.3d 811, 816-17 (8th Cir. 2005). "Defendants who challenge the sentencing court's determination of drug quantity face an uphill battle on appeal because we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." *United States v. Coleman*, 148 F.3d 897, 902 (8th Cir. 1998), *cert. denied* 525 U.S. 899 (1998) (internal quotation omitted).

Mr. Allen contends that the district court improperly attributed to him 13.85 grams of crack cocaine that was found in the shoe of Jawon Tyson, an unindicted co-conspirator, in 1999. Mr. Allen was tried after the Supreme Court held that facts increasing the maximum sentence that a defendant can receive must be proven beyond a reasonable doubt to a jury, *see Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), but before the decision in *Booker,* 125 S. Ct. at 756-57, which preserved the federal sentencing guidelines by rendering them advisory. The government, because of its uncertainty about the guidelines' constitutionality at the time of trial, sought to forestall any sixth-amendment issue by asking the jury to determine the amount of crack cocaine for which Mr. Allen was responsible. The jury arrived at the amount of 46.72 grams, which Mr. Allen and the government agree must have included the 13.85 grams that were found on Mr. Tyson. At Mr. Allen's sentencing, the district court, now aware that the intervening *Booker* decision left it with the authority to make the necessary finding of drug quantity, elected to adopt the jury's overall determination. Mr. Allen contends that there is no evidence that the drugs found on Mr. Tyson were attributable to the conspiracy for which Mr. Allen was convicted.

The evidence presented at trial established that police officers stopped a vehicle that belonged to Mr. Tyson for a traffic violation. Mr. Tyson was a passenger, and Mr. Allen was driving. Mr. Allen gave the police a false name, and a search of the car revealed a gun concealed under one of the floor mats in the back seat, along with marijuana and valium. A search of Mr. Tyson yielded the 13.85 grams of crack cocaine in issue, packaged in individual doses. At trial, Mr. Box testified that one of

people who supplied his and Mr. Allen's supplier was named "Jawon." Viewing the record as a whole, including Mr. Box's testimony, the police officers' testimony about Mr. Allen's drug-related activities, and the undisputed portions of the presentence investigation report, the district court could have reasonably inferred that Messrs. Allen and Tyson were engaged in jointly undertaken criminal activity and that it was reasonably foreseeable that Mr. Tyson would be carrying crack cocaine that was intended for distribution. *See* U.S.S.G. § 1B1.3. Although this evidence is hardly overwhelming, and we would have doubts about sustaining the finding if it required proof beyond a reasonable doubt, we cannot say that the district court's determination based upon a preponderance of the evidence was clearly erroneous. *See United States* v. *Pirani*, 406 F.3d 543, 551, 551 n.4 (8th Cir. 2005) (en banc), *cert. denied* 126 S. Ct. 266 (2005).

IV.

We affirm the judgment of the district court.

_____