# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4470

_____

United States of America,      *
                                 *

    Plaintiff - Appellee,      *
                                   *   Appeal from the United States

    v.                                *   District Court for the District

                                   *   of Nebraska.

Donna J. Johnson,        *
                                   *

    Defendant - Appellant.      *

_____

Submitted: May 16, 2006
Filed: September 15, 2006

_____

Before MURPHY, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Donna Johnson appeals from her conviction of three counts of mail fraud in violation of 18 U.S.C. § 1341 and the sentence imposed upon her. She argues that (1) the evidence was not sufficient to support her conviction; (2) the district court[1] committed reversible error in admitting evidence of other wrongs in violation of Fed. R. Evid. 404 (b); (3) the district court erred in allowing testimony about the receipt of "kickbacks"; and (4) the district court erred in rejecting a plea agreement it had previously accepted. We affirm.

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Johnson was employed with the State of Nebraska between 1988 and 2002, where she originally worked as an income maintenance worker, a position that was later reclassified as a social services worker. As a social services worker, Johnson was responsible for determining client eligibility for Nebraska public assistance as well as authorizing and issuing benefits. The Nebraska Department of Health and Human Services administered benefits through several different state programs, including Temporary Assistance to Needy Families, Aid to the Aged, Blind and Disabled, the Child Care Program, and the Food Stamp Program. Johnson would input client data into the Nebraska Family Online Client User System (N-Focus), which would then determine client eligibility for Nebraska public assistance. Benefits include the issuance of treasury warrants, which are checks made out by the State of Nebraska and issued, in most instances, to the recipient of the benefits. Under the Child Care Program, however, the state paid daycare costs directly to the beneficiary's daycare providers.

The superseding indictment charged that Johnson entered false or misleading information into the State's computer program to qualify individuals for Nebraska public assistance benefits who were not otherwise eligible. The indictment further charged that Johnson manipulated N-Focus to authorize and certify the issuance of benefits and payments to individuals not qualified to receive them. In exchange for kickbacks, Johnson caused three State of Nebraska treasury warrants to be issued and mailed to unqualified individuals.

Denay Ward was the subject of the charges in Count I of the indictment. She stated that during a telephone conversation, Johnson informed her that despite the fact that Ward already owned a washer and dryer, Ward was nonetheless entitled to a check to purchase a washer and dryer. Johnson then informed Ward that she expected to receive half of the money from the check. The treasury warrant that formed the basis of Count I was a check for $375 that Ward received in the mail under the Child Care Program, despite the fact that she was not using daycare at the time. Ward

testified that over the course of two years, she received, via U.S. mail, some ten to fifteen extra checks from Johnson, and that she gave half of each extra check back to Johnson. The extra treasury warrants were issued under the Child Care Program as well as Aid to the Aged, Blind and Disabled. The extra treasury warrants were issued despite the fact that Ward was not entitled to them, she did not submit any receipts or documentation for them, and she did not request them.

Count II involved a treasury warrant mailed to Gizelle Grayer. Johnson was the social services worker for Grayer when Grayer telephoned her requesting assistance. Johnson responded by issuing a Child Care treasury warrant in the amount of $400, despite the fact that Grayer's child care costs were being paid by the State of Nebraska directly to the child care provider. After receiving the check for $400, Grayer gave half of the check back to Johnson. Grayer would eventually split between three and five treasury warrants with Johnson.

Count III involved a treasury warrant mailed to Betty Coleman Oliver under the Child Care Program. Oliver testified that at the time she received the treasury warrant for $600, she was not incurring any childcare costs. After receiving the check, Oliver met Johnson outside of her office and gave her half the amount of the check in cash. Oliver identified four treasury warrants that she received and split with Johnson. Oliver stated that she knew she was not entitled to any of the checks issued under the Child Care Program because she was not incurring child care costs at the time that Johnson issued the checks.

The district court heard from several other witnesses regarding benefits issued by Johnson to individuals not entitled to receive them. LaQuitta Coleman testified that she received a treasury warrant for $600, despite the fact that she had never requested any extra benefits from Johnson. Coleman also testified that she was not entitled to the check she received. Melanie Johnson testified that she received a treasury warrant for childcare expenses in the amount of $900, and paid Johnson

-3-

somewhere between $100 and $300. The money paid to Johnson, moreover, came from the difference between the treasury warrant and the actual childcare expenses, and was therefore a benefit to which Coleman was not entitled. Lawanda McCullough testified that over the course of two years, she paid Johnson somewhere between $500 and $600 from checks received under Aid to the Aged, Blind and Disabled. Valerie Alexander testified that she called Johnson about receiving additional money, and soon after their conversation, she received a check for $400. Shortly after Alexander received the check from Johnson, Johnson called Alexander and informed her that Johnson "needed [Alexander] to help her out." Alexander gave Johnson a portion of the treasury warrant Alexander had received.

When the Nebraska Department of Health and Human Services began an investigation based on an anonymous tip, an auditor determined that seventy-one of Johnson's files contained fraudulent activity. The fraud investigator for the Department of Health and Human Services, Jana McDonough, estimated that Johnson paid $5,905 to individuals with no active application on file at all. It was estimated by McDonough that the total amount in fraudulent payments made by Johnson was $180,527.51.

On March 28, 2005, Johnson entered a plea of guilty with the district court. At her sentencing hearing on June 24, 2005, Johnson testified regarding objections she had to the presentence report. Under oath, Johnson contradicted statements previously made in her petition to enter a guilty plea. The district court then rejected the plea and plea agreement and set the matter for trial. The district court nevertheless gave Johnson the opportunity to withdraw her sentencing testimony in support of her objections to the presentence report, but Johnson did not elect to do so. Following a jury trial, Johnson was convicted of three counts of mail fraud in violation of 18 U.S.C. § 1341.

I.

On appeal, Johnson argues that there was insufficient evidence to support her conviction of mail fraud. When considering the sufficiency of evidence to support a criminal conviction, "we review the evidence in the light most favorable to the government and accept all reasonable inferences that support the jury's verdict." United States v. Allen, 440 F.3d 449, 450 (8th Cir. 2006). We will uphold the verdict if it is supported by substantial evidence, which is evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. Id. The standard we employ is a strict one, and we do not lightly overturn a jury's verdict. Id.

The jury found Johnson guilty of three counts of mail fraud. To establish mail fraud, the government must prove that the defendant did the following: (1) voluntarily and intentionally devised or participated in a scheme to defraud; (2) entered into the scheme with intent to defraud; (3) knew that it was reasonably foreseeable that the mails would be used; and 4) used the mails in furtherance of the scheme. United States v. Hively, 437 F.3d 752, 760 (8th Cir. 2006).

Johnson argues that the evidence presented for all three counts of mail fraud fails to establish that either Ward, Grayer, or Oliver were ineligible for benefits, thereby preventing the government from proving that Johnson engaged in a scheme with intent to defraud. While Johnson is correct that, as recipients of Nebraska public assistance, Ward, Grayer and Oliver could have been entitled to receive child care benefits from the State of Nebraska, they were not entitled to receive reimbursement for childcare costs they never incurred.

Ward and Oliver testified that they were not entitled to the Child Care treasury warrants that formed the basis of Counts I and III of the indictment because they were not using daycare at the time that the treasury warrants were issued. While it is true that they would have been eligible for assistance had they been incurring daycare

costs, the government presented evidence of specific illegitimate payments. The evidence was therefore sufficient to establish that Johnson was engaged in a scheme to defraud when she issued and mailed treasury warrants to Ward and Oliver.

Grayer testified that she was not entitled to the Child Care treasury warrant that formed the basis of Count II because at the time the treasury warrant was issued, all daycare costs incurred by Grayer were being paid by the State of Nebraska directly to the daycare provider. Evidence of an extra and unnecessary treasury warrant mailed directly to Grayer is sufficient to establish that Johnson engaged in a scheme to defraud when she issued and mailed a treasury warrant to Grayer.

II.

Johnson next argues that the district court improperly admitted evidence of other wrongdoing by Johnson in violation of Fed. R. Evid. 404 (b). She argues that because the government did not present sufficient evidence of mail fraud, it sought to bolster its case by presenting evidence of other fraudulent overpayments made by Johnson as well as kickbacks paid to Johnson by her clients. Johnson argues that the evidence presented of other wrongful conduct was more prejudicial than probative.

We review evidentiary rulings for abuse of discretion and reverse only when "an erroneous ruling prejudices the outcome of the case." United States v. Lopez, 384 F.3d 937, 942 (8th Cir. 2004), cert. denied, 126 S.Ct. 1078 (2006).

We have held that Rule 404(b), which governs the admission into evidence of wrongful conduct other than the conduct at issue, applies "only to 'extrinsic' and not to 'intrinsic' evidence." United States v. Swinton, 75 F.3d 374, 377 (8th Cir. 1996). Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred. United States

v. Forcelle, 86 F.3d 838, 842 (8th Cir. 1996). Such evidence is admitted because "the other crime evidence 'completes the story' or provides a 'total picture' of the charged crime." Id.

Johnson's receipt of kickbacks from clients to whom she directed fraudulent treasury warrants is indispensable for providing the motive for the charges of mail fraud. The kickbacks provide an explanation for why Johnson directed fraudulent treasury warrants to several of her clients. See United States v. McGuire, 45 F.3d 1177, 1188 (8th Cir.), cert. denied, 515 U.S. 1132 (1995). We therefore conclude that the admission of evidence concerning kickbacks received by Johnson was an inextricable part of the government's case and that the district court did not abuse its discretion in allowing the admission of such evidence.

Moreover, evidence of other overpayments was relevant to refute the defense of mistake, which Johnson put at issue. Evidence of other wrongs, although inadmissible to show that a person acted in conformity with the prior act, may be admissible for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404 (b). Such evidence is admissible if it is (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value. United States v. Oman, 427 F.3d 1070, 1075 (8th Cir. 2005).

During trial, Johnson presented evidence that the office in which she worked was a busy and demanding environment. Barbara Boettger, one of Johnson's co-workers, testified that "[w]orking with a welfare clientele, there's constant phone calls, appointments to review, and applications. So there's appointments with clients on a regular basis. There's interruptions because clients would walk into the building asking to see the caseworker. And the workload was excessive." Counsel for Johnson stated during opening argument that there was "going to be evidence that

mistakes were made."  A central element of Johnson's defense, then, was that the fraudulent overpayments made by Johnson were a result of a busy office environment and not a part of any scheme by Johnson to defraud the State of Nebraska.

Johnson injected the issue of mistake or absence of mistake into the trial, thereby making it relevant.  See U.S. v. Misle Bus & Equipment Co., 967 F.2d 1227, 1234 (8th Cir. 1992).  The district court limited the jury's use of evidence of fraudulent overpayments by stating that such evidence was going to be presented only for the purpose of whether Johnson "had the opportunity, had a plan, had the intent, or had the knowledge to devise a scheme to defraud" the government.  Second, evidence of other fraudulent overpayments made by Johnson is similar in nature to the charged conduct.  Johnson was charged with three counts of mail fraud in relation to fraudulent overpayments issued to her clients.  The other wrongful conduct by Johnson presented by the government was essentially the same in that it involved the fraudulent issuance of treasury warrants to Johnson's clients.  Third, there is sufficient evidence the alleged acts occurred.  Fourth, contrary to Johnson's argument, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Evidence of other fraudulent overpayments by Johnson is probative of intent and a lack of mistake by Johnson in regards to a scheme to defraud the State of Nebraska.  The evidence was not "so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial." United States v. Adams, 401 F.3d 886, 900 (8th Cir. 2005), cert. denied, 126 S.Ct. 492 (2006) (internal quotation omitted).  We therefore conclude that the district court did not abuse its discretion in admitting evidence of other fraudulent overpayments issued by Johnson.

III.

Johnson also argues that the government's use of the word "kickback" was overly prejudicial and should have been excluded by the district court under Fed. R. Evid. 403.  When balancing the prejudicial effect and probative value under rule 403,

we give great deference to the district court's ruling. United States v. Plumman, 409 F.3d 919, 928 (8th Cir. 2005).

While the use of the word "kickback" is certainly not favorable to Johnson, the fact remains that "rule 403 of the Federal Rules of Evidence does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." Wade v. Haynes, 663 F.2d 778, 783 (8th Cir. 1981), aff'd sub nom., Smith v. Wade, 461 U.S. 30 (1983). Having already determined that evidence of money given to Johnson by clients was properly admitted by the district court as an inextricable part of the government's case, we also conclude that allowing the use of the term "kickback" was not an abuse of discretion by the district court. Webster's Third New International Dictionary (1981) defines kickback as "a percentage payment exacted as a condition for granting assistance by one in a position to open up or control a source of income or gain." The word "kickback" is a term of generally understood meaning. Johnson gives us no reason to believe that the evidence presented by the government demonstrated anything other than the receipt of kickbacks or that there is a more apt way of describing Johnson's conduct. The fact that the word "kickback" was harmful to Johnson's case is insufficient to demonstrate that the basis of the jury's verdict was improper.

IV.

Finally, Johnson argues that the district court should not have rejected Johnson's Rule 11(c)(1)(C) plea agreement after having once accepted it. Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo. United States v. Borer, 412 F.3d 987, 994 (8th Cir. 2005). Generally speaking, "[a]ppellate courts have consistently prohibited district courts from interfering in the plea bargaining process." United States v. Olesen, 920 F.2d 538, 540 (8th Cir. 1990).

We have also held, however, that a district court may, upon a showing of fraud on the court, intervene in a plea agreement.  See Olesen, 920 F.2d at 541.

As the record indicates, Johnson contradicted her previous statements regarding her guilt at the sentencing hearing.  As a result of the conflicting stories, the district court determined that Johnson "had probably obstructed justice and very likely lied on the witness stand during her testimony in support of her objections to the presentence  report."  In light of these findings, the decision by the district court to reject Johnson's previously accepted plea agreement is permissible as an exception for fraud on the court as outlined in Oleson. The district court therefore did not err when it decided to reject Johnson's previously accepted plea agreement and again give Johnson the choice to either plead guilty or go to trial.

V.

We conclude that there was sufficient evidence to support the jury's decision to convict, the district court did not err in its evidentiary rulings, and the district court did not err in rejecting Johnson's previously accepted guilty plea.  We affirm.

_____