# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2139
_____

United States of America

*Plaintiff - Appellee*

v.

Tony Lendell Reed

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 19, 2020
Filed: October 14, 2020
_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

A jury convicted Tony Lendell Reed of six counts of interference with commerce by robbery. 18 U.S.C. § 1951. Reed appeals (1) the district court's[1] denial

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable David T. Schultz, United States Magistrate Judge for the District of Minnesota.

of his motion to suppress cell site location information (CSLI) obtained under the Stored Communications Act, 18 U.S.C. § 2703(d); (2) the admission at trial of additional, uncharged robberies; and (3) his sentence. We affirm.

I.

Reed committed a string of eleven robberies in Illinois, Minnesota, and Mississippi in 2017. The Government charged him with six counts of interference with commerce by robbery for the Minnesota crimes, which shared common facts: Reed, an auto parts store, a weapon, and store employees restrained by zip ties. Reed robbed the first Minnesota store on June 12 with Derf Reed, his uncle, and Orlando Harris, his girlfriend's cousin. Harris, along with an unidentified male, helped with the second on June 28. Reed then committed the third and fourth robberies alone in September, the fifth with another unidentified male in October, and the sixth with Tyrell Campbell in November.

The Government connected Reed to a mobile phone (the "8219 phone") and obtained an order under § 2703(d) for the number's CSLI between April 17, 2017 and December 21, 2017. The CSLI located the 8219 phone near the robberies at the relevant times. Reed moved to suppress the CSLI after the Supreme Court decided that court orders under § 2703(d) violated the Fourth Amendment. *Carpenter v. United States*, 138 S. Ct. 2206 (2018). But the district court found the exclusionary rule inapplicable because the Government reasonably relied on § 2703(d) as it was not obviously unconstitutional when officers sought the order.

Harris, Derf, and Campbell all pleaded guilty. At Reed's trial for the Minnesota crimes, the district court admitted, over Reed's objection, video evidence, CSLI, and testimony that Harris and Reed also robbed Illinois GameStop, Advance Auto Parts, and AutoZone stores, and that Reed and Derf robbed an Illinois O'Reilly Auto Parts store while Harris was outside in their car. The district court also

-2-

admitted, again over objection, a Mississippi officer's testimony, CSLI, and video evidence linking Reed to a December 10 tobacco shop robbery in Holly Springs, Mississippi.

The jury convicted Reed on all charges. At sentencing, the district court set Reeds's total offense level at 32, overruling his objection to a two-level obstruction of justice enhancement, and found he had a criminal history category of VI. The Guidelines recommended a sentence between 210 and 262 months in prison. The court sentenced him to 240 months, and Reed timely appealed.

II.

Reed first asks us to reverse the district court's denial of his motion to suppress the CSLI. We review the district court's fact findings for clear error and its denial of a motion to suppress, including its application of the good faith exception to the warrant requirement, *de novo*. *See United States v. Smith*, 820 F.3d 356, 359 (8th Cir. 2016); *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012).

The Supreme Court decided *Carpenter* six months after the § 2703(d) order in this case. The Court held that individuals have a reasonable expectation of privacy in CSLI, and so the Government generally needs a warrant supported by probable cause to obtain it. *Carpenter*, 138 S.Ct. at 2220–21. It further concluded that § 2703(d) was "not a permissible mechanism for accessing [CSLI]" because it allowed the Government to access historic CSLI after showing only "reasonable grounds" for believing that "the records were relevant and material to an ongoing investigation." *Id.* at 2221. Because obtaining CSLI via a § 2703(d) order based on a reasonable grounds standard violates the Fourth Amendment, the only question here is whether the CSLI should be suppressed.

The exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 232 (2011). A search in violation of the Fourth Amendment "does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). The rule applies to deter future unlawful police conduct. *Illinois v. Krull*, 480 U.S. 340, 347 (1987). We ask whether the "statute is clearly unconstitutional" because the "provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Id.* at 349, 355. If reliance on the statute was reasonable, we do not suppress because "an officer cannot be expected to question the judgment of the legislature that passed the law." *Id.* at 349–50.

Reed makes three arguments why the officers' reliance on § 2703(d) was not reasonable: (1) on its face, the statute lacks the safeguards necessary to limit officers' discretion and is obviously unconstitutional; (2) reasonable officers were on notice that a § 2703(d) order is constitutionally suspect because the statute allowed officers to choose between seeking a warrant or court order; and (3) an out-of-circuit decision informed officers that the order was unconstitutional. Reed Br. 10–11.

We first address Reed's argument that the statute was obviously unconstitutional. Before *Carpenter*, under the third-party doctrine, an individual had "no legitimate expectation of privacy in information he voluntarily turn[ed] over to third parties," *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979), regardless of whether he assumed the information would "be used only for a limited purpose," *United States v. Miller*, 425 U.S. 435, 443 (1976). Under *Smith* and *Miller*, "the Government [was] typically free to obtain such information from the recipient without triggering Fourth Amendment protections." *Carpenter*, 138 S.Ct. at 2216. That changed with respect to CSLI after *Carpenter*'s holding "that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." *Id.* at 2217. When the officers obtained the order here, they reasonably

-4-

believed that Reed lacked a legitimate expectation of privacy in his CSLI because of the third-party doctrine, so the statute was not obviously unconstitutional.

Second, officers were not on notice that the statute was unconstitutional because it permitted them to seek an order or a warrant. Before *Carpenter*, it was objectively reasonable to believe that, under the third-party doctrine, either process was proper. The officers followed the Act's procedures and the magistrate found they comported with the statutory requirements, so Reed cannot show the officers were on notice or that they acted in bad faith.

Reed's final argument hinges on *United States v. Davis*, 754 F.3d 1205, 1217 (11th Cir. 2014), vacated and reh'g en banc granted, 573 F. App'x 924 (11th Cir. 2014), opinion reinstated in part and reh'g en banc in part, 785 F.3d 948, 518 (11th Cir. 2015),[2] that an individual has a reasonable expectation of privacy in CSLI. In his view, *Davis* notified officers prior to *Carpenter* that collecting CSLI via a § 2703(d) order could be unconstitutional. *Davis* never controlled in this circuit. Plus, other circuits reached contrary conclusions. *See United States v. Graham*, 824 F.3d 421, 424–25 (4th Cir. 2016) (en banc); *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013); *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. To Disclose Records to Gov't*, 620 F.3d 304, 313 (3d Cir. 2010). The fact that courts came to different conclusions suggests that reasonable officers could have believed § 2703(d) was constitutional prior to *Carpenter*.

---

[2]We express no view on how *Davis*'s subsequent history impacts Reed's argument, as we conclude the officers' reliance on § 2703(d) was objectively reasonable regardless.

Reed next argues that the district court abused its discretion by admitting evidence of uncharged robberies. The district court admitted video evidence, texts, CSLI, and Harris's testimony about the Illinois robberies as "intrinsic evidence" and admitted the Mississippi tobacco shop robbery evidence for modus operandi, identity, and helping the jury determine the location of the phone and Reed at the relevant time. We review the district court's decisions for abuse of discretion. *United States v. Young*, 753 F.3d 757, 767 (8th Cir. 2014).

We first address the intrinsic evidence. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The rule only applies to extrinsic, not intrinsic, evidence. *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006) (citation omitted). "Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred." *Id.* Intrinsic evidence "'completes the story' or provides a 'total picture' of the charged crime." *Id.*

The court did not abuse its discretion by admitting evidence of the four uncharged Illinois robberies as intrinsic evidence. Harris's testimony about the uncharged robberies revealed the pattern and routine that helped explain how Reed committed the robberies charged in the indictment. *See United States v. Morrison*, 748 F.3d 811, 813 (8th Cir. 2014). Testimony and video of the uncharged robberies also corroborated Reed's identity, possession of the 8219 phone, and location at the time of the robberies.

For example, the June 9 Illinois Advance Auto Parts surveillance video showed Reed wearing a dark green Under Armour jacket, also worn in a photo taken and sent on June 23 from the 8219 phone, the June 28 Minnesota robbery video, and the

December 10 Mississippi robbery video. This was intrinsic evidence of Reed's identity, use of the 8219 phone, and location. Harris also testified about the routine used in the Minnesota robberies by explaining that, after the April 10 Illinois robbery, they decided to use zip ties during future robberies because it was "a quick way to get away instead of having to run." 1/29/19, Trial Tr. 175:11–12. When the pair robbed the Illinois Advance Auto Parts store on June 9, they established a pattern: they worked quickly, brought a weapon into the store, and used zip ties to restrain employees. Harris then testified about the June 12 Minnesota robbery conducted with Reed and Derf using that same routine. And though Harris stayed in the car while Reed and Derf robbed the Illinois store on June 13, they followed the established method. Harris again joined Reed as the pair robbed an Illinois AutoZone on June 24, following the same procedure. Harris's testimony regarding Reed's routine in the uncharged Illinois robberies provided the jury with especially helpful context for the three Minnesota robberies Reed committed alone or with only an unidentified accomplice using the same procedure.

Nor did the court abuse its discretion by admitting evidence regarding the Mississippi robbery under Rule 404(b). While other acts are not admissible to show propensity, they can show proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The rule is one of inclusion and we reverse a court's decision to admit evidence only when it is irrelevant and introduced solely for propensity purposes. *United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010). Evidence of other crimes is admissible if it is: "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than prejudicial effect; and (4) similar in kind and close in time to the crime charged." *United States v. Jourdain*, 433 F.3d 652, 659 (8th Cir. 2006).

The district court concluded that the Mississippi tobacco shop robbery evidence was helpful in proving Reed's identity. We agree. The Mississippi

evidence identified Reed and further connected him to the 8219 phone. The CSLI placed the 8219 phone near the tobacco shop during the robbery. The perpetrator brandished a weapon and restrained employees with zip ties, as was Reed's routine. The security film showed a man in a dark green jacket. This testimony, video evidence, and the CSLI provide sufficient evidence that Reed committed the robbery. *See id.* The tobacco shop robbery was similar in kind to Reed's crimes of conviction and was close in time as it occurred within one month after Count VI's robbery.

Though the evidence regarding the uncharged robberies is prejudicial to Reed, it is not unfairly so. *See United States v. Buckner*, 868 F.3d 684, 689 (8th Cir. 2017). The probative value of the evidence as to routine, adherence to that routine, and identity during the charged robberies outweighed its prejudicial effect.

IV.

Reed finally argues that the district court committed procedural error at sentencing by applying an obstruction of justice enhancement. We review the court's application and construction of the Guidelines *de novo* and review its factual findings for clear error. *United States v. Wintermute*, 443 F.3d 993, 1004 (8th Cir. 2006).

Reed contends that the district court failed to make the proper fact findings necessary to support the enhancement's application, and that the facts could not support the application. "A defendant is subject to an enhancement under U.S.S.G. 3C1.1 if he testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake." *United States v. Nichols*, 416 F.3d 811, 821 (8th Cir. 2005) (citation omitted). Because Reed objected to the enhancement, the court was required to "make findings that the defendant willfully gave false testimony concerning material matters in the case." *Id.* (citation omitted). We do not require findings on each perjury element "when the evidence of the defendant's willfulness was 'unequivocal' and 'the record left no doubt that the

defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory." *United States v. Brown*, 311 F.3d 886, 890 (8th Cir. 2002) (citations omitted).

At trial, Reed denied possession and ownership of the 8219 phone. He testified that between June 2017 and the time of his arrest, he used the mobile phone only three times and claimed "I did not obtain this phone. It wasn't in my possession. It was not around me." 1/31/20, Trial Tr. 703:21–23. His testimony was contradicted by text messages sent on June 27 and 30 signed by "T.L."[3] Reed's mother texted him on the 8219 phone on August 27. The day after the September 10 Minnesota robbery, Reed purchased a car, listed the 8219 phone in his contact information, and the car lot owner testified that he called and spoke with Reed at the number after the sale. This evidence sufficiently supports the court's finding that Reed obstructed justice by perjuring himself during trial.

The district court found more evidence of obstruction. While Reed was in custody, officers recorded a conversation between Reed and his girlfriend, Latrice Harris. After Reed learned that Latrice admitted ownership of the 8219 phone, Reed informed her that she "needed to stop," that it was not her phone, that they only got the phone a month ago, that they burned another phone onto the 8219 phone, and instructed her to go where no one else could hear him talk. The court reasonably inferred that Reed was attempting to instruct Latrice to help distance him from the phone.

Although the court did not specifically recite Reed's testimony or the call, the Government summarized both at sentencing. The court then observed that "[t]he combination of [Reed's] testimony and his phone call to Latrice amply support the

---

[3]At trial, Harris testified that at least one of Reed's nicknames was T.L. 1/29/20, Trial Tr. 166:21–24.

obstruction of justice enhancement." Sent. Tr. 5:5–7. We have previously affirmed application of the obstruction of justice enhancement when a district court recalled the trial testimony and found it was obstruction of justice, *Nichols*, 416 F.3d at 822 (collecting cases), and we do so here. Reed's testimony was unequivocal and was not the result of mistake or faulty memory. It was also not erroneous for the court to conclude that Reed's call with Latrice was obstruction.[4] We therefore affirm the court's application of the enhancement and Reed's sentence.

V.

We affirm the district court's judgment.

———————————————

---

[4]In Reed's 28(j) letter dated September 11, 2020, he argues that *United States v. Crockett*, 819 F. App'x 473 (8th Cir. 2020), requires the district court to make a finding that Reed believed Latrice was going to testify against him. The obstruction alleged in *Crockett* involved an attempted murder-for-hire scheme targeting an informant. *Id.* The reasoning does not apply to a perjury obstruction enhancement, nor does it apply to a direct instruction to falsify evidence.

-10-