# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3290

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| James F. Boesen, Jr., | * | |
| | * | |
| Defendant – Appellee. | * | |

_____

Submitted: February 14, 2007
Filed: May 29, 2007

_____

Before LOKEN, Chief Judge, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted James F. Boesen, Jr., of one count of conspiracy and 81 counts of health care fraud, under 18 U.S.C. §§ 371, 1347. The district court granted Mr. Boesen's motion for acquittal on all counts.[1] The government appeals. Having jurisdiction under 18 U.S.C. § 3731, this court reverses the judgment of acquittal and remands with instructions to reinstate the jury's verdict.

_____

[1] Mr. Boesen was tried jointly with his brother, Dr. Peter Vincent Boesen. Dr. Boesen was acquitted only on the conspiracy count. The government's appeal of that count (06-3291) will be considered with his appeal in that case.

I.


Mr. Boesen was hired by his brother Dr. Boesen as office manager and administrator of the Boesen Clinic. His duties included submitting the clinic's claims for reimbursement to federal health care programs and private insurance companies.

The Boesen Clinic uses the Current Procedural Terminology (CPT) coding system for billing. The CPT lists and codes the medical procedures and services of physicians. The codes determine the amount of reimbursement by insurance companies and the government. At the clinic, a physician selects and enters a CPT code on a touch-screen computer. Mr. Boesen reviews the codes and submits the claims.

The indictment centers on three CPT codes: (1) code 31237, nasal endoscopy with debridement, (2) code 69150, radical removal of an external ear canal mass, and (3) code 92588, otoacoustic emissions (OAE) tests. The indictment charges that the Boesens billed codes 31237 and 69150 when those procedures were not performed, and performed code 92588 when it was not medically necessary.

At trial, the government presented evidence that Mr. Boesen was trained in coding, often consulted by other employees about coding, reviewed the codes after procedures were performed, and submitted them to insurance companies and the government. Mr. Boesen also attended meetings with insurance companies and handled patient billing complaints.

Dr. Heidi Close, a physician formerly at the Boesen Clinic, told the jury that the Boesens regularly discussed money concerns and ideas to generate more revenue. Mr. Boesen told her that the OAE test (code 92588) was a "very high paying procedure" and that billing for codes 31237 and 69150 accounted for 40% of Dr. Boesen's revenue.

Dr. Close stated that Mr. Boesen once confronted her about not performing as many debridements (code 31237) as Dr. Boesen. When she explained that the procedure was necessary only after surgery and that he could not force her to do it, Mr. Boesen told her she could perform debridements at other times as well, "Well, I know I can't make you do debridements, but I can definitely make sure you don't have any more sinus patients scheduled because I need that revenue and we need that revenue and I will make sure that Dr. Boesen sees those patients." Dr. Close testified that Mr. Boesen told Dr. Boesen that she was "costing us hundreds of thousands of dollars." Mr. Boesen terminated her employment when she argued with them and resisted assisting Dr. Boesen in a surgery she did not believe medically necessary. As she was packing her things, Mr. Boesen came to her office and told her that if she did not assist with the surgery, he would not honor her separation agreement and would not pay for her benefits. (Both sides eventually abided by the agreement.)

The clinic's audiologist testified that she was concerned with the clinic's use of OAE (code 92588) tests. Mr. Boesen said she should not confront Dr. Boesen about it or she would be fired. According to the audiologist, she stopped performing OAE tests (code 92588) when Mr. Boesen informed her that insurance companies believed Dr. Boesen was using them more than any other doctor, but resumed them after Mr. Boesen instructed her to.

Dr. Barbara Evans, a patient of the clinic (not named in the indictment), testified that she called the clinic to question her billing on code 31237. She spoke with Mr. Boesen and "one of the first things he said" was "I can assure you your medical record will fully support the code." He later commented that "why would we buy a new piece of equipment if it wasn't to make money." Dr. Evans said that Mr. Boesen became upset and yelled at her. A clinic employee testified that Mr. Boesen was aware that a "stand out" number of patient billing complaints centered on code 31237.

In 2001, the clinic hired a consulting company to review its billing codes and determine whether the use of code 69150 (removal of a mass from the ear) was appropriate. The consultant testified she advised Mr. Boesen that the patient notes did not support the use of 69150 codes; he responded that they knew it was not the correct code. She also stated that the case was notable because of Mr. Boesen's concern about the insurance companies and because her company sent the records back to the clinic after review because they were "fairly incriminating." The clinic continued billing this code after receiving the consultant's recommendation.

In 2002, several insurance companies terminated Dr. Boesen as a participating provider (many later reinstated him, albeit subject to various conditions). The jury heard evidence that after Wellmark, a major insurer, notified Dr. Boesen of his termination, Mr. Boesen commented that "it was a good run while it lasted, but now we're going to have to find something else."

The jury convicted Mr. Boesen on all counts. The district court granted his motion for judgment of acquittal finding that he, as a non-medical professional, relied on the medical judgment of his brother and that "a reasonable jury could not find beyond a reasonable doubt that James Boesen knowingly and willfully engaged in health care fraud or that he intentionally joined in an agreement with his brother to do so."

II.

This court must first consider its jurisdiction. *See **Carter v. Ashland, Inc.***, 450 F.3d 795, 796 (8th Cir. 2006). The government appeals, invoking 18 U.S.C. § 3731. Section 3731 is "designed to permit the government to appeal unfavorable orders in any situation in which the Double Jeopardy Clause does not prohibit an appeal." ***United States v. Brekke***, 97 F.3d 1043,1047 (8th Cir. 1996). The Double Jeopardy Clause protects against the threat "of multiple punishment or successive prosecution."

-4-

*United States v. Mundt*, 846 F.2d 1157, 1160 n.4 (8th Cir. 1988). There is no such threat when reversal on appeal would "merely reinstate the jury's verdict." *Id.* Here, the jury convicted Mr. Boesen of conspiracy and health care fraud. A reversal would reinstate that verdict and not subject Mr. Boesen to a new trial. This court has jurisdiction over the government's appeal.

III.

In reviewing a judgment of acquittal, this court applies the same standards as the district court. *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007). The district court must enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction. **Fed. R. Crim. P. 29(a)**; *United States v. Water*, 412 F.3d 812, 816 (8th Cir. 2005). This standard is "very strict" and a jury's verdict should not be overturned lightly. *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005). "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006), *quoting* *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999); *see also* *United States v. Mendoza-Larios*, 416 F.3d 872, 873 (8th Cir. 2005), *United States v. Jackson*, 345 F.3d 638, 647 (8th Cir. 2003).

This court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict. *Water*, 413 F.3d at 816; *Ellefson*, 419 F.3d at 862. Evidence supporting a conviction is sufficient "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Weston*, 4 F.3d 672, 674 (8th Cir. 1993). This court reinstates the jury's verdict if "drawing all reasonable inferences in favor of the verdict, there is an interpretation of the evidence that would allow a reasonable minded jury to find the defendant[] guilty

beyond a reasonable doubt." ***United States v. Oberhauser***, 284 F.3d 827, 829 (8th Cir. 2002), *quoting **United States v. Ervasti***, 201 F.3d 1029, 1036 (8th Cir. 2000).

The issue here is whether an interpretation of the evidence allows a reasonable-minded jury to find Mr. Boesen guilty, beyond a reasonable doubt, of conspiracy and health care fraud.

To convict Mr. Boesen of conspiracy, the government was required to show that there was a conspiracy with an illegal purpose, he and Dr. Boesen were aware of the conspiracy, and they both knowingly became part of it. *See **United States v. Fitz***, 317 F.3d 878, 881 (8th Cir. 2003). There must be evidence of an agreement between the Boesens and its illegal objective. *See **Jackson***, 345 F.3d at 648.

To convict Mr. Boesen of health care fraud, the government had to prove beyond a reasonable doubt that he knowingly and willfully executed, or attempted to execute:

> a scheme or artifice – (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services.

**18 U.S.C. § 1347**.

Here the jury believed evidence that Mr. Boesen was trained in coding, often discussed the clinic's revenue and the prices of procedures, handled patient billing complaints, and submitted the CPT codes to insurance companies. The jury also found that Mr. Boesen submitted for reimbursement: (1) between 1 and 68 claims per patient for code 31237, as to 24 patients listed in the indictment, (2) between 14 and

-6-

65 claims per patient for code 69150, at to 8 patients, and (3) between 2 and 17 claims per patient for code 92588, as to 4 patients.

A clinic employee testified that Mr. Boesen knew that a number of patient billing complaints centered on code 31237. A former physician at the Boesen Clinic testified that Mr. Boesen terminated her and threatened not to pay her benefits or honor her separation agreement after she argued with the Boesens and resisted assisting in a surgery she did not believe was medically necessary. The clinic's audiologist stated that Mr. Boesen told her she would be fired if she confronted Dr. Boesen about the overuse of the OAE test. After a consultant told Mr. Boesen that patient notes did not support the use of code 69150, he continued billing that code. The jury also heard evidence that several insurance companies dropped Dr. Boesen as a participating provider and that Mr. Boesen attended meetings with those companies, helping prepare responses for those meetings. He commented after losing Wellmark, "it was a good run while it lasted, but now we're going to have to find something else." Additionally, the clinic audiologist testified that Mr. Boesen told her to stop performing code 69150 because insurance companies believed that Dr. Boesen used the test more than any other doctor.

The district court found that although the government's case "raises suspicion and serious concern, perhaps even rising to the greater weight of the evidence," "the coding involved resulted from the description of medical procedures that James Boesen did not witness and coding decisions made by Dr. Boesen." The court noted that Mr. Boesen relied on his brother to tell him which procedures were done and therefore did not have the necessary knowledge or intent to commit health care fraud. The court found that the statements attributed to Mr. Boesen "raise suspicion, but are subject to interpretation, inconsistent with the requisite knowledge and intent to engage in fraud." The district court held that Mr. Boesen's statement ("it was a good run while it lasted") was "striking" but might "reasonably arise from a good faith

dispute with insurance companies and his acceptance of his brother's view of the medical benefits rather than knowledge and intent for fraud."

In ruling on a motion for a judgment of acquittal, the role of the court "is not to weigh evidence . . . but rather to determine whether the Government has presented evidence on each element to support a jury verdict." *United States v. Chavez*, 230 F.3d 1089, 1091 (8th Cir. 2000); *see also Johnson*, 474 F.3d at 1048; *United States v. Hernandez*, 301 F.3d 886, 889 (8th Cir. 2002). Mr. Boesen cites *United States v. Dunlap*, 28 F.3d 823, 827 (8th Cir. 1994), for the proposition that where the government's evidence is "equally consistent" with innocence or the uncharged conduct, a conviction cannot stand. This holding was fully articulated in *United States v. Davis*, 103 F.3d 660, 667 (8th Cir 1996), "[w]here the government's evidence is equally strong to infer innocence as to infer guilt, the verdict must be one of not guilty." However, this court has made clear that "if the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *Baker*, 98 F.3d at 338. This court has reconciled the quoted holdings: *Davis* refers only to the government's evidence, while *Baker* refers to all of the evidence, including that presented by the defense. *See United States v. Bolzer*, 367 F.3d 1032, 1035 n.1 (8th Cir. 2004); *see also United States v. Flores*, 362 F.3d 1030, 1035 n. 1 (8th Cir. 2004); *see also Water*, 413 F.3d at 816.

Conspiracy may be proved by circumstantial evidence and "may be implied by the surrounding circumstances or by inferences from the actions of the parties." *Fitz*, 317 F.3d at 881. In accordance with *United States v. Jain*, 93 F.3d 436, 440 (8th Cir. 1996), the jury was instructed that the government must prove that Mr. Boesen acted with the intent to do something that the law forbids, with a bad purpose, and that Mr. Boesen's good faith was a complete defense. This intent to defraud "need not be shown by direct evidence; it may be inferred from all the facts and circumstances surrounding the defendants' actions." *United States v. Wrehe*, 628 F.2d 1079, 1082 (8th Cir. 1980).

At trial, the jury was given a deliberate ignorance instruction:

> You may find a defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability of the fact in question and that he deliberately avoided learning the truth. The element of knowledge may be inferred if a defendant deliberately closed his eyes to what would otherwise have been obvious to him.

In order for Mr. Boesen's ignorance to be deliberate, he must have been presented with facts that put him on notice that criminal activity was probably afoot, and then failed to investigate those facts. *See United States v. Woodward*, 315 F.3d 1000, 1004 (8th Cir. 2003).

Although the district court interpreted the evidence to find that Mr. Boesen relied on his brother, "one possible innocent explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." *Johnson*, 474 F.3d at 1050, *quoting United States v. Maloney*, 466 F.3d 663, 667 (8th Cir. 2006). The evidence presented "need not exclude every reasonable hypothesis except guilt." *Baker*, 367 F.3d at 797; *see also Water*, 413 F.3d at 816. The government is given the benefit of reasonable inferences, so long as they are not conjecture and speculation. *See Cacioppo*, 460 F.3d at 1021; *Hernandez*, 301 F.3d at 890 ("conjecture is something less than an inference reasonably drawn from the evidence"); *United States v. Pace*, 922 F.2d 451, 453 (8th Cir. 1990) (speculation does not weigh against the defendant).

Viewing the evidence most favorably to the government, a reasonable jury could have inferred that Mr. Boesen knowingly and willfully executed a scheme to defraud a health care program, acting in a conspiracy with Dr. Boesen. Although the evidence might also support a conflicting hypothesis, it supports jury's verdict. This court will not disturb that conclusion.

IV.

The judgment of the district court is reversed, and the case remanded with instructions to reinstate the jury's verdict.[2]

————————————————

———————————————

[2] On remand, Mr. Boesen intends to request a new trial. Rule 33 provides that "upon defendant's motion" a district court may grant a new trial if the motion is filed withing seven days after the verdict or finding of guilty (for any reason other than newly discovered evidence). **Fed. R. Crim. P.33**; *see also* **Fed. R. Crim. P. 29(d)(1)** ( if "the court enters a judgment of acquittal after a guilty verdict, the court must also determine whether *any motion* for a new trial should be granted if the judgment of acquittal is later vacated or reversed") (emphasis added). Mr. Boesen did not file a motion for a new trial. The district court does "not have the power under Rule 33 to order a new trial sua sponte." **United States v. Martinson**, 419 F.3d 749, 752 (8th Cir. 2005); *see also* **United States v. Moran**, 393 F.3d 1, 10 (1st Cir. 2004) (a motion for a new trial is untimely when first made after remand from a reversal of a judgment of acquittal).