# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2781

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Stephen Anayo Onwumere, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 11, 2008
Filed: July 2, 2008

_____

Before WOLLMAN, BOWMAN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Stephen Anayo Onwumere was convicted of mail fraud, in violation of 18 U.S.C. § 1341, and of possession of counterfeit securities, in violation of 18 U.S.C. § 513(a), and was sentenced to 24 months of imprisonment. Onwumere appeals his conviction, challenging the sufficiency of the evidence against him. He also argues that the district court incorrectly calculated his offense level during sentencing. We affirm the conviction, but reverse and remand for resentencing.

## I.

On March 6, 2006, Customs and Border Protection officers in Memphis, Tennessee, intercepted a package mailed to Onwumere from Benin, a small nation in West Africa, that contained fifty-six fraudulent securities with a face value of $34,780.

On March 24, 2006, Onwumere received a package via FedEx that contained nine pre-addressed envelopes. Near closing time on March 31, 2006, Onwumere entered a post office in Little Rock, Arkansas and loitered in the lobby, which was walled-off by glass, long enough that a window clerk became concerned to the point that he called a fellow employee to his area to monitor Onwumere's movements. Onwumere exited the building, returned a few minutes later, and began filling out certified receipts. He declined to put his return address on the envelopes, even after the window clerk pointed out the omission. The postal employees notified postal inspectors, who discovered that the envelopes contained counterfeit money orders with a face value of $52,320. A subsequent search of Onwumere's apartment and computer revealed, among other things, the receipts for the certified mail, handwritten notes that added up the amounts of the counterfeit securities, a Nigerian telephone number next to the name "Uchenna," and two emails from someone named Uche (a short form of Uchenna). The first email, dated March 26, stated that Uche wanted "to make this clear that the packages consist of fake money orders, I have to let you know this so you will know the content." It asked, "Also brother I don't know if you be interested in helping me to receive some payment by Western Union for me that is if it can't be traced to you . . . ." Uche then expressed his gratitude to Onwumere because "it's you I can tell all this nobody else."

Onwumere was cooperative with investigators, one of whom testified that Onwumere had admitted to them that he knew that the money orders were fake and that Uche had told him that. Onwumere's defense at trial was that he did not know the money orders were counterfeit until the day after he sent them. He testified that

while driving his taxi he had met a man in February 2006 who said he was a lawyer named Ken from Ghana. As he dropped the man off at the Little Rock airport, Onwumere gave him a business card for future cab rides, along with his telephone number and email address. Ken called Onwumere a few days later and explained that he needed to send some letters to people in the United States, but because it was so expensive to do so, he wanted to send them in one package internationally and have Onwumere mail them separately from within this country. Onwumere agreed to do so. When no package arrived, Onwumere inquired of a letter carrier whether he might have some mail that may not have been delivered to his newly rented apartment. When Onwumere received the package on March 24, he knew that it was from Ken, even though bore the name "Sam Johnson." Upon opening the envelopes, he was surprised by the amount of money they contained, so he called Ken. Although the person who answered did not know any "Ken," Uche soon got on the line, clarified that his real name was Uchenna, and thanked Onwumere for his help. Onwumere further testified that it was not until April 1 that he read the March 26 email stating that the money orders were fake.

## II.

The elements of mail fraud are that the defendant "(1) voluntarily and intentionally devised or participated in a scheme to defraud; (2) entered into the scheme with intent to defraud; (3) knew that it was reasonably foreseeable that the mails would be used; and (4) used the mails in furtherance of the scheme." United States v. Johnson, 463 F.3d 803, 807 (8th Cir. 2006). Criminal possession of a counterfeit security requires that the possessor intend to deceive another entity. 18 U.S.C. § 513(a). For both crimes, the requisite intent need not be proved by an actual admission from the defendant, but can be inferred from the defendant's actions. United States v. Radtke, 415 F.3d 826, 837 (8th Cir. 2005). We review a challenge to the sufficiency of the evidence in the light most favorable to the jury's verdict and accept reasonable inferences in support of the verdict. Johnson, 463 F.3d at 807. We

do not lightly reverse a jury's verdict, and we will do so only if it was not based on substantial evidence. Id.

Onwumere's first argument is that the evidence was insufficient to prove that he had the requisite intent to defraud when he possessed or mailed the counterfeit money orders. At most, he argues, it shows that he was tricked into participating in the fraudulent scheme. When viewed in the light most favorable to the verdict, however, the evidence shows that Onwumere received money orders, each worth thousands of dollars, from a man he had met only once and who had enlisted his help for the ostensible purpose of avoiding international shipping costs. Ken sent Onwumere the package under the name Sam Johnson and finally revealed that his real name was Uche. Five days before Onwumere mailed the money orders, Uche emailed him, stating in the clearest possible terms that the money orders were fake. Onwumere acknowledged to the investigators that he was aware of the documents' falsity. Onwumere's suspicion-arousing conduct at the post office, coupled with his declining to put his return address on the envelopes in the face of the window clerk's reference to the omission, are hardly consistent with innocent behavior. Taken together, these facts, coupled with Onwumere's admissions to the investigating officers, constituted substantial evidence from which the jury could infer that Onwumere intended to participate in a fraudulent scheme.

III.

Onwumere contends that the district court erred by finding that he was responsible not only for the $52,320 that he actually mailed but also for the $34,780 that was intercepted on March 6. This resulted in an eight rather than a six-level enhancement for the amount of loss, see United States Sentencing Commission, Guidelines Manual, (U.S.S.G.)§ 2B1.1(b), resulting in an applicable guidelines range of 24-30 months instead of 18-24 months. We review for clear error a district court's

-4-

finding that uncharged conduct is a part of a common scheme for sentencing purposes. United States v. Adams, 451 F.3d 471, 473 (8th Cir. 2006).

The enhancement for the amount of loss is based on either the actual loss, in this case zero, or the amount of loss that the defendant intended to cause. U.S.S.G. § 2B1.1(b)(1), cmt. n.3(A); United States v. Staples, 410 F.3d 484, 490 (8th Cir. 2005). A defendant's sentence is to be based upon the reasonably foreseeable acts of other persons taken in furtherance of a jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1). The conduct of others prior to the defendant joining the criminal activity does not constitute relevant conduct under the guidelines. U.S.S.G. § 1B1.3 cmt. n.2. At sentencing, therefore, the government was required to prove by a preponderance of the evidence that Onwumere knew on March 6 that he was involved in a fraudulent scheme. David Bararrett, a United States postal inspector, testified on cross-examination at the sentencing hearing that the government's investigation developed evidence that Onwumere was expecting to receive a package in early March, but he acknowledged that the government uncovered no evidence that Onwumere knew that the package contained counterfeit securities prior to the March 26 email. Accordingly, we conclude that the district court should not have included the money orders seized on March 6 when calculating the total amount of loss intended by Onwumere.

The government urges that any error in including the March 6 money orders in the amount of loss is harmless because the sentence imposed is within the range that would be applicable if they were not included. "If the sentence imposed falls within the guideline range urged by the appellant and if it is clear that the sentencing court would have imposed the same sentence regardless of whether the appellant's argument for a lower guideline range ultimately prevailed, there can be no reversible error in the sentence." United States v. Harris, 390 F.3d 572, 573 (8th Cir. 2004) (internal quotation omitted).

The analysis followed in <u>Harris</u> seems to have been called into question by some of our most recent decisions. <u>See</u> <u>United States v. Icaza</u>, 492 F.3d 967 (8th Cir. 2007), and <u>United States v. Bah</u>, 439 F.3d 423 (8th Cir. 2006). <u>But see</u> <u>United States v. Vickers</u>, No. 07-2184, slip op. (8th Cir. June 20, 2008).

In any event, we conclude that <u>Harris</u> does not support an affirmance here, for in that case the overlap between the two possible sentencing ranges was 168 to 188 months. 390 F.3d at 573. In affirming, we noted that the district court said that it had intended to impose a greater sentence. It then set the sentence at 188 months, though, so that if the lower range were appropriate the sentence would stand. <u>Id.</u> Unlike <u>Harris,</u> the district court here did not indicate that it would impose the same sentence even if the lower guidelines range were applicable. Also, in <u>Harris</u> the sentence was not at the bottom of the guidelines range, whereas in this case it was. Further, the district court noted that Onwumere had no history of criminal behavior and that it believed Onwumere's testimony about his sterling work-history record since coming to this country. Accordingly, it is not clear to us that the same sentence would have been imposed had the correct guidelines range been applied.

The conviction is affirmed. The sentence is vacated and the case is remanded to the district court for resentencing.

_____