# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 06-3291/07-2217

———————

United States of America,       *
                                 *

        Appellee/Cross-Appellant,   *
                                 *   Appeal from the United States

    v.                         *   District Court for the
                                 *   Southern District of Iowa.

Peter V. Boesen, M.D.,       *
                                 *

        Appellant/Cross-Appellee.  *

———————

Submitted: April 17, 2008
Filed: September 8, 2008

———————

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

A jury convicted Peter V. Boesen of conspiracy to commit health care fraud in violation of 18 U.S.C. § 371 and eighty-two counts of health care fraud in violation of 18 U.S.C. § 1347. The district court sentenced Dr. Boesen to 51 months' imprisonment and three years of supervised release. Dr. Boesen appeals the convictions, the sentence enhancements, and the order of restitution. The government cross-appeals the judgment of acquittal on the conspiracy count.

Jurisdiction being proper under 28 U.S.C. § 1291 and 18 U.S.C. § 3731, this court affirms in all respects except for the acquittal on the conspiracy count, and remands for proceedings consistent with this opinion.

I.

Dr. Boesen specialized in otolaryngology, the medical and surgical treatment of the ears, nose, and throat. In 1995 he established Boesen Specialists in Otolaryngology, a clinic which billed private insurers as well as Medicare and Medicaid. Dr. Boesen's brother, James F. Boesen, Jr., served as the office manager and administrator of the clinic.

The American Medical Association classifies medical procedures and tests in the manual Current Procedural Terminology. The CPT codes are used for health insurance billing. The CPT code for nasal endoscopy with debridement is 31237, the code for cholesteatoma removal is 69150, and the code for otoacoustic emissions tests is 92588.

By 2000 the Boesen clinic was regularly billing payers for these three codes. In 2002 two private insurance companies, John Deere Healthcare, Inc., and Wellmark Blue Cross and Blue Shield of Iowa, contacted Dr. Boesen about the frequency of his billing for these codes. By December 2002 Dr. Boesen was no longer a participating provider with either insurance program. (Dr. Boesen later rejoined Wellmark Blue Cross and Blue Shield of Iowa as a participating provider on the condition that he obtain a second opinion before billing for certain procedures, including nasal endoscopy with debridement procedures.)

The government alleged that between December 2000 and December 2002 the Boesen clinic billed for 82 procedures and tests that were not actually performed or that were medically unnecessary. The government charged Dr. Boesen and his brother

James with conspiracy to commit health care fraud, 51 counts of fraudulent billing for CPT 31237 procedures, 24 counts of fraudulent billing for CPT 69150 procedures, and seven counts of fraudulent billing for CPT 92588 tests. The government also sought forfeiture of $493,954.00.

A jury found both defendants guilty on all counts. The district court immediately granted James Boesen's motion for a judgment of acquittal on all counts, which this court reversed. *United States v. Boesen*, 491 F.3d 852 (8th Cir. 2007).

The district court also granted Dr. Boesen's motion for acquittal on the conspiracy count. In the earlier appeal, this court reserved consideration of Dr. Boesen's acquittal on the conspiracy count until the district court ruled on all of Dr. Boesen's post-trial motions. *Id.* at 853 n.1.

The district court eventually ruled on the remainder of Dr. Boesen's motions. The court denied the motions for a judgment of acquittal or for a new trial. The court did, however, grant Dr. Boesen's motion for a new trial on three of the CPT 69150 counts because the jury forms incorrectly identified the patient.

When determining the advisory Sentencing Guidelines range, the district court imposed a two-level enhancement under United States Sentencing Guideline (U.S.S.G.) § 3C1.1 for obstruction of justice. The court calculated that Dr. Boesen's fraud caused a loss of $931,526.86, and imposed a 14-level sentence enhancement under U.S.S.G. § 2B1.1.

II.

Dr. Boesen contends that (1) his Sixth Amendment Confrontation Clause rights were violated; (2) prosecutorial misconduct deprived him of a fair trial; (3) prejudicial statements by the district court deprived him of a fair trial; (4) the district court erred

by failing to grant his motion for a judgment of acquittal on the fifty-one CPT 31237 counts; (5) the court erred in determining the loss amount; and (6) the district court erred by applying a two-level sentence enhancement under U.S.S.G. § 3C1.1.

A.

Dr. Boesen contends that the district court violated his Sixth Amendment right to confront witnesses by barring the admission of DVDs during his cross-examination of witnesses in the government's case-in-chief. The DVDs, which Dr. Boesen created in 2005 and 2006 after he was indicted, depicted him performing otolaryngological procedures without anesthesia on two patients named in the indictment.

The district court based its ruling on the fact that Dr. Boesen created the DVDs after he was indicted, and thus admitting the DVDs into evidence during the government's case-in-chief would allow Dr. Boesen to testify without being subject to cross-examination. Once Dr. Boesen took the witness stand in his own defense, the court admitted the DVDs.[1] Dr. Boesen made no attempt to recall government witnesses for cross-examination after the DVDs were admitted.

The Sixth Amendment to the United States Constitution guarantees an accused the right "to be confronted with the witnesses against him." **U.S. Const. amend. VI, § 1**. "The United States Supreme Court has emphasized that 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" **United States v. Wipf**, 397 F.3d 677, 682 (8th Cir. 2005), *quoting*

---

[1]Citing *Simmons v. United States*, 390 U.S. 377 (1968), Dr. Boesen argues that he was forced to testify at trial in violation of the Fifth Amendment. *Simmons* held that a defendant's testimony at a Fourth Amendment suppression hearing may not be used against him at trial. *Simmons* has no applicability here, where a defendant seeks to testify at trial through taped testimony created after his indictment.

*Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (per curiam). "We review a district court's decision to limit cross-examination for an abuse of discretion, reversing only if there has been clear abuse of discretion and a showing of prejudice to the defendant." *Id.* at 683.

The Federal Rules of Evidence empower district court judges to control the mode and order of examining witnesses. **Fed. R. Evid. 611(b)**. Dr. Boesen had an opportunity to cross-examine all government witnesses. While the district court prevented Dr. Boesen from introducing his DVDs during the government's case-in-chief, the court did not prevent Dr. Boesen from introducing the DVDs during the presentation of his own case. Once the DVDs were admitted, Dr. Boesen was free to recall any witness; Dr. Boesen's failure to do so is not an error of the trial court. "A critical factor in determining whether the right to confrontation has been violated is whether defendant had other means available to obtain the same effect as the excluded inquiry." *United States v. Beckman*, 222 F.3d 512, 524 (8th Cir. 2000).

B.

Dr. Boesen also alleges prosecutorial misconduct. In particular, Dr. Boesen claims that he was deprived of a fair trial because of (1) improper comments in Assistant United States Attorney Stephen O'Meara's closing argument and (2) federal prosecutors' possession of and reference at trial to Iowa Workforce Development records concerning Dr. Boesen's income. This court reviews a district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Garcia-Hernandez*, 530 F.3d 657, 663 (8th Cir. 2008) (internal citation omitted).

"To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (internal quotations and citations omitted). To determine whether misconduct has occurred, this court applies a two-part test:

"first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." ***United States v. Eagle***, 515 F.3d 794, 804 (8th Cir. 2008) (internal citation omitted). "In order to determine whether the defendant was deprived of a fair trial, we consider the following three factors: (1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions, if any, taken by the district court." ***Id.*** at 804-05 (internal citation omitted).

1.

Dr. Boesen's first charge of prosecutorial misconduct concerns the final three sentences of Assistant United States Attorney O'Meara's closing argument. "Prosecutorial remarks during closing argument can be grounds for reversing a defendant's conviction if they were improper and prejudicially affected the defendant's substantial rights so as to deprive her of a fair trial." ***United States v. Boone***, 437 F.3d 829, 841 (8th Cir. 2006) (internal citation omitted), *cert. denied*, --- U.S. ----, 127 S.Ct. 172, 166 L.Ed.2d 123 (2006). In his closing, AUSA O'Meara stated:

> If you reach the point that you feel in the honesty of your gut that you can go ahead and take that action, that's beyond reasonable doubt. The government believes that considering all of the evidence that you have received, that having given due and careful deliberations in the interest of all of the people concerned about this case, you can reach in your gut that honest feeling that Jim Boesen and Peter Boesen are guilty of these crimes as charged. If you reach that honest feeling in your gut, you should convict these defendants.

Dr. Boesen failed to object to AUSA O'Meara's statements until after the case had been submitted to the jury. This court reviews for plain error and will reverse only in exceptional circumstances. ***Eagle***, 515 F.3d at 804; ***United States v. Davis***, 534 F.3d 903, 914 (8th Cir. 2008) (internal citation omitted).

After reviewing AUSA O'Meara's comments in the context of his closing argument, this court concludes that the comments do not warrant reversal of Dr. Boesen's convictions. O'Meara prefaced his discussion of "gut" feelings by reading and discussing a portion of the "reasonable doubt" instruction.[2] The prosecutor focused the jurors' attention on the word "hesitate" in the instructions, and his "gut" comments were directed at that term, not at misrepresenting the government's burden of proof. True, this court has advised prosecutors to "avoid trying to explain to the jury the meaning of 'beyond a reasonable doubt.'" *United States v. Drew*, 894 F.2d

_____

[2]The relevant portion of the trial transcript begins:

O'MEARA: Finally, reasonable doubt, and I'll conclude and the judge can send you to your business. This is an important instruction because in a lot of ways everything that happens from here on out hinges on reasonable doubt. "A reasonable doubt is a doubt based upon reason and common sense and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt."

Let's talk about the term "hesitate" that is used in there twice –

THE COURT: Mr. O'Meara, I'm going to have to ask you to get to closure pretty quickly, please.

O'MEARA: Yes, Your Honor.

The judge is going to ask you to hesitate and deliberate. Every one here, the defendants and the government, are interested in you to hesitate and deliberate. The point is not that that's what the hesitation instruction is talking about. This is like one of the most important decisions in your life, both from the standpoint of the defense and the standpoint of the government. But you have to take an action when you're making an important decision in your life. If you reach the point that you feel in the honesty of your gut . . . .

965, 969 (8th Cir. 1990). Here, however, the "gut" comments are explained by surrounding remarks, and the prosecutor and the district court repeatedly and accurately informed the jury of the government's burden of proof. *See United States v. Kenyon*, 481 F.3d 1054, 1066 (8th Cir. 2007) ("It is well established . . . that not every impropriety of argument calls for a new trial or for a reversal of the judgment of conviction.") (internal quotations and citations omitted).

2.

Dr. Boesen's second claim of prosecutorial misconduct arises from a question asked of government witness Steve Irwin. Irwin, an accountant in the Boesen clinic for over five years, had a detailed knowledge of the clinic's finances. Irwin's previous testimony revealed that the clinic billed fewer CPT 31237 procedures after insurers raised questions about the clinic's billing practices.

After cross-examination by Dr. Boesen, on re-direct AUSA O'Meara asked Irwin whether he knew if Dr. Boesen's income declined after 2001. When Irwin said he did not know, AUSA O'Meara began to ask a question about "work force numbers" that showed a decline in Dr. Boesen's annual income "by almost a million dollars." Before AUSA O'Meara completed the question, Dr. Boesen's counsel objected, the district court sustained the objection, and O'Meara moved to a different line of questioning. Dr. Boesen moved for a mistrial after the jury left to deliberate.

Dr. Boesen argues that asking the question was prosecutorial misconduct that prejudiced his substantial rights. In particular, Dr. Boesen alleges that the government should never have had any knowledge of "work force numbers" since the income information provided to state authorities is privileged, and that the question was asked in bad faith.

This court first addresses the contention that federal prosecutors' possession of information in Iowa Workforce Development Reports is prosecutorial misconduct. While Iowa law does not expressly authorize federal prosecutors to access Workplace Development reports, the district court held that Iowa Code § 96.11(6)(g) implicitly authorizes such access. This court reviews a district court's interpretation of a state statute de novo. *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 532 F.3d 797, 803 (8th Cir. 2008) (internal citation omitted). "The long established plain language rule of statutory interpretation requires examining the text of the statute as a whole by considering its context, object, and policy." *Id.* (internal quotations and citation omitted).

Dr. Boesen is correct that Iowa law imposes confidentiality restrictions on Workforce Development records. **Iowa Code § 96.11(6)(b)(1)**. However, section 96.11(6)(g) refers to federal law enforcement officials' use of Workforce Development records:

> Information subject to the confidentiality of this subsection shall not be directly released to any authorized agency unless an attempt is made to provide written notification to the individual involved. Information released in accordance with criminal investigations by a law enforcement agency of this state, another state, or the federal government is exempt from this requirement.

*Id.* **§ 96.11(6)(g)**. While the statute does not expressly include the Department of Justice among the federal departments that are exempt from the confidentiality restrictions, section 96.11(6)(g) exempts federal law enforcement officials from the statute's notification requirements when they make use of the reports.

This court construes statutes to avoid rendering sections of statutes superfluous. *United States v. Stanko*, 491 F.3d 408, 413 (8th Cir. 2007) (internal citation omitted), *cert. denied*, --- U.S. ----, 128 S.Ct. 1874, 170 L.Ed.2d. 752 (2008). Even in the absence of an express exception, section 96.11(6)(g) envisions the use of Workforce

-9-

Development records by federal prosecutors. To interpret the statute otherwise would render section 96.11(6)(g) superfluous because the legislature would not need to exempt federal law enforcement from the notification requirement if federal prosecutors had no authority to access the records in the first place. Federal prosecutors did not act improperly by using Dr. Boesen's Workforce Development records.

Beyond mere possession of the records, Dr. Boesen also alleges prosecutorial misconduct based on AUSA O'Meara's question to government witness Irwin about "work force numbers." "The district court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *United States v. Hollins*, 432 F.3d 809, 812 (8th Cir. 2005) (internal quotations and citation omitted).

Dr. Boesen is correct that the government did not introduce the Workforce Development Reports into evidence and thus could not question Irwin about them. However, Dr. Boesen's counsel immediately objected to this line of questioning, the district court sustained Dr. Boesen's objection, and AUSA O'Meara adopted a different line of inquiry. This court cannot conclude that the district court abused its discretion by refusing to grant Dr. Boesen's motion for a new trial based on prosecutorial misconduct.

C.

1.

Dr. Boesen alleges that the district court erred by commenting on prayers for him at a local church. During the second week of trial Judge Gritzner expressed concern, outside the presence of the jury, that a juror might be inadvertently exposed to prayers at the church. Judge Gritzner did not advise defense counsel to take any

-10-

particular action, but merely stated: "I call that to your attention because I think that's a rather dangerous situation with regard to making sure that we have a fair trial." Dr. Boesen did not make a contemporaneous objection to Judge Gritzner's statement.

This court reviews allegations of inappropriate comments by a district court judge under plain error when the defendant does not object to the comments at trial. *United States v. Wilkinson*, 124 F.3d 971, 977 (8th Cir. 1997). "We hesitate to disturb a judgment by reason of a few isolated, allegedly prejudicial comments of a trial judge." *Id.* at 978 (internal quotations and citations omitted). In this instance, Dr. Boesen was not prejudiced by Judge Gritzner's comments made outside the presence of the jury.

2.

Dr. Boesen also contends that the district court erred by admitting into evidence government charts summarizing the clinic's billings between 1997 and 2002. Dr. Boesen claims that these charts contained irrelevant evidence and were unfairly prejudicial. "The admissibility of summary charts, graphs, and exhibits rests within the sound discretion of the trial judge, whose action in allowing their use may not be disturbed by an appellate court except for an abuse of discretion." *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005) (internal quotations and citation omitted).

"The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." **Fed. R. Evid. 1006**. "Summary evidence is properly admitted when (1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *Green*, 428 F.3d at 1134 (internal quotations and citation omitted).

For a summary chart to be admissible under Rule 1006, it must also contain relevant information. **Fed. R. Evid. 402**. Relevant evidence includes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." **Fed. R. Evid. 401**.

The government's summary charts were properly admitted under Rule 1006. The charts were relevant, summarizing background information on the clinic's revenue stream, a central issue at trial. The charts assisted the jury's comprehension of government witnesses' testimony by demonstrating the significance of CPT 31237 and 69150 billings. Finally, the special agent who prepared the summary charts was subject to extensive cross-examination by Dr. Boesen.

Dr. Boesen also maintains that, even if the summary charts were technically admissible under Rule 1006, the district court should have excluded them because the unfair prejudice of the charts substantially outweighed their probative value. A district court may exclude evidence that is otherwise admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." **Fed. R. Evid. 403**. This court reviews a district court's decision not to exclude evidence on Rule 403 grounds for abuse of discretion. *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007), *cert. denied*, --- U.S. ----, 128 S.Ct. 1298, 170 L.Ed.2d 119 (2008) (internal quotations and citation omitted).

The district court did not abuse its discretion by not excluding the charts under Rule 403. While the charts did tend to incriminate Dr. Boesen, Rule 403 only requires exclusion when unfair prejudice results. Dr. Boesen suffered no unfair prejudice because the charts accurately summarized the revenue of the clinic, and evidence is not unfairly prejudicial merely because it tends to prove a defendant's guilt. "Rule

-12-

403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case." ***United States v. Jiminez***, 487 F.3d 1140, 1145 (8th Cir. 2007) (internal quotations and citation omitted).

## D.

Dr. Boesen challenges his conviction for 51 counts of fraudulent billing for CPT 31237 procedures by claiming that the evidence was insufficient to convict him. "We review a challenge to the sufficiency of the evidence in the light most favorable to the jury's verdict and accept reasonable inferences in support of the verdict." ***United States v. Onwumere***, 530 F.3d 651, 653 (8th Cir. 2008) (internal citation omitted). "We do not lightly reverse a jury's verdict, and we will do so only if it was not based on substantial evidence." ***Id.*** (internal citation omitted).

The indictment charged that Dr. Boesen and his brother "did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the health care benefit programs . . . in that they billed for procedures not actually performed, but for which Boesen Specialists in Otolaryngology would be paid more money." The indictment charged 51 separate violations based on a corresponding number of fraudulent CPT 31237 billings by the Boesen clinic during a 25-month period.

Dr. Thomas J. Kidder, the government's first witness, described inconsistencies between Dr. Boesen's treatment of patients and the medical standards for CPT 31237 procedures. Dr. Kidder testified that he reviewed the entire medical file of each patient named in the indictment, including Dr. Boesen's own notes about each patient. He further testified that these files and notes indicated that Dr. Boesen removed either granulation tissue or crusted mucous when he treated the patients for whom he submitted the CPT 31237 claims named in the indictment, rather than performing (the billed-for) nasal endoscopy with debridement procedures.

Of the fifty-one CPT 31237 billings at issue, Dr. Boesen's patient files and notes, according to Dr. Kidder, substantiated only one instance of a genuine nasal endoscopy with debridement. However, Dr. Kidder testified that even that single instance was suspect, as it would have been virtually impossible to perform, without anesthesia, a true CPT 31237 procedure under the circumstances described in the patient file. Dr. Kidder's testimony was corroborated by the trial testimony of some of the former patients, who described receiving extremely cursory attention from Dr. Boesen in instances when he billed for CPT 31237 procedures.

The substance of Dr. Boesen's insufficiency-of-evidence claim concerns the testimony of Dr. Kidder on cross-examination. Dr. Kidder testified that the removal of crusted or dried mucous using an endoscope, but without using anesthesia, would technically constitute a debridement. Dr. Boesen's counsel then questioned Dr. Kidder about "how many of the cases could there be in the indictment" of instances where Dr. Boesen technically performed a debridement even though his treatment notes indicated something else. Dr. Kidder responded to the question by stating: "I believe a number of his cases that is probably what happened is that he removed crusts or dried secretions from the nose using suction or forceps and the endoscope to see what he was doing."

When asked for a "firm number" of such cases by defense counsel, Dr. Kidder replied, "I don't have that number on the top of my head. I would have to go back through all of these records and try and list them." Defense counsel then dropped this line of questioning, and the government did not seek clarification from Dr. Kidder on re-direct.

Dr. Boesen contends that Dr. Kidder's statements under cross-examination preclude a rational fact-finder from finding Dr. Boesen guilty beyond a reasonable doubt on any particular CPT 31237 fraudulent billing count. Dr. Boesen argues that

-14-

Dr. Kidder effectively conceded that some CPT 31237 billings were for true debridements, and thus the jury could not rationally convict Dr. Boesen of any single count if it required proof beyond a reasonable doubt for every single count charged.

This argument is unpersuasive. Dr. Kidder testified that he reviewed the patient files and physician notes for every patient named in the indictment. He further testified that each of the fifty-one CPT 31237 billings was inconsistent, either on its face or after further investigation, with the medical standards for CPT 31237 procedures. The government further buttressed Dr. Kidder's testimony with material evidence and the testimony of Dr. Boesen's former patients. This court finds that the jury's verdict is supported by sufficient evidence.

E.

Dr. Boesen also contests the district court's loss calculation, which impacted the advisory Sentencing Guidelines range and the restitution obligation. A sentencing court calculates a reasonable estimate of the loss based upon a preponderance of the evidence. *United States v. Hartstein*, 500 F.3d 790, 795 (8th Cir. 2007), *cert. denied*, --- U.S. ----, 128 S.Ct. 939, 169 L.Ed.2d 734 (2008); *see* **U.S.S.G. § 2B1.1 cmt. n.3(C)** ("The court need only make a reasonable estimate of the loss."). The district court imposed a 14-level sentence enhancement under U.S.S.G. § 2B1.1 after finding Dr. Boesen responsible for a loss of $931,526.86; the court also ordered restitution in that amount. This court reviews the loss calculation for clear error. *United States v. Erhart*, 415 F.3d 965, 970 (8th Cir. 2005) (internal citation omitted).

The district court reached its loss figure by combining the loss attributable to the charged crimes with extrapolation evidence of other health insurance fraud committed by Dr. Boesen. The court determined that the loss attributable to the false claims in the indictment amounted to $425,869.06. The court then considered

evidence of fraudulent claims submitted to private insurers that were not in the indictment. The government argued that 67 percent of Dr. Boesen's claims to private insurers in the relevant period were fraudulent, but the court noted that this fraud rate was based on cases reviewed by the government in connection with trial, and thus was "skewed by the fact that they had selected specific cases . . . ." The court instead looked to the lowest rate of fraudulent claims in the record, identified as 52 percent, and held that "it is that rate, minus a little bit, that is the most appropriate in trying to determine a reasonable amount for loss calculation." The court concluded that a "50 percent extrapolation rate is reasonable under all of the circumstances of this case . . . ."

The court applied this 50-percent rate to the claims outside the indictment submitted to two private insurers during the relevant time period. The court thus calculated the two insurers' losses as $168,310.50 and $334,652.30, respectively. It then reached the total loss figure of $931,526.86 by combining the loss from the crimes in the indictment with the extrapolation figures.[3]

Dr. Boesen asserts that the district court used an unreliable method of extrapolation to calculate the loss amount. A district court may consider unindicted criminal activity when determining loss. "Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Radtke*, 415 F.3d 826, 841 (8th Cir. 2005), *quoting* **U.S.S.G. § 1B1.3(a)(2)**. A district court's determination of loss need not be precise, although it must reflect a reasonable estimate of the loss. *Erhart*, 415 F.3d at 971.

---

[3]On remand, the district court may adjust the restitution to correct an apparent mathematical error in summing the three loss totals.

This court cannot conclude that the district court erred when it calculated the loss attributable to Dr. Boesen's crimes.[4]  The court identified the lowest fraud rate in the record, adjusted that rate downward for Dr. Boesen's benefit, and applied it to claims that were clearly relevant conduct under U.S.S.G. § 1B1.3(a)(2).  "We recognize that the district court need make only a reasonable estimate of the loss, and we accord particular deference to the loss determination because of the district court's unique ability to assess the evidence and estimate the loss."  *United States v. DeRosier*, 501 F.3d 888, 895 (8th Cir. 2007) (internal quotations and citation omitted).

F.

Dr. Boesen challenges the district court's imposition of a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  "We review a trial court's factual findings for clear error and its construction of the advisory guidelines *de novo*."  *United States v. New*, 491 F.3d 369, 379 (8th Cir. 2007), *citing United States v. Garcia-Gonon,* 433 F.3d 587, 591-92 (8th Cir. 2006).

U.S.S.G. § 3C1.1 requires the district court to impose a two-level sentence enhancement when it determines that a defendant has obstructed justice.  **U.S.S.G. § 3C1.1.**  The commentary to U.S.S.G. § 3C1.1 includes "committing, suborning, or attempting to suborn perjury" among examples of conduct that justify imposition of the enhancement.  ***Id.* cmt. n.4(b)**.

---

[4]While the extrapolation evidence is relevant for determination of the restitution award, this court notes that the district court would have reached the same 14-level sentence enhancement under **U.S.S.G. § 2B1.1** solely by considering the loss attributable to the crimes in the indictment, which amounted to $425,869.06. **U.S.S.G. § 2B1.1(b)(1)(H)** imposes a 14-level sentence enhancement when the loss is greater than $400,000 but less than or equal to $1,000,000.

"Before imposing an enhancement under § 3C1.1, the district court must 'review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice.'" *United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008), *quoting United States v. Dunnigan*, 507 U.S. 87, 95 (1993). To impose an enhancement under § 3C1.1, the court must find that the defendant obstructed justice by a preponderance of the evidence. *United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008) (internal citations omitted), *petition for cert. filed* (U.S. Aug. 12, 2008) (No. 08-5793).

At trial Dr. Boesen waived his Fifth Amendment right against self-incrimination and testified in his own defense. Asked by his counsel whether he performed the procedures at issue, Dr. Boesen testified, "yes, absolutely." The district court found that this testimony was "fundamentally inconsistent with the jury verdict and the evidence in support of the verdict . . . ." The court based the imposition of the § 3C1.1 enhancement on this one statement after finding, by a preponderance of the evidence, that "the defendant gave false testimony concerning a material matter with the willful intent to provide false testimony rather than as a result of confusion, mistake or faulty memory."

"We have repeatedly affirmed obstruction-of-justice enhancements, despite the absence of specific findings on the elements of perjury, when the evidence of the defendant's willfulness was unequivocal and the record left no doubt that the defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory." *United States v. Vickers*, 528 F.3d 1116, 1122 (8th Cir. 2008) (internal citation omitted); *see*, *e.g.*, *United States v. Titlbach*, 300 F.3d 919, 924 (8th Cir. 2002) (affirming imposition of a § 3C1.1 enhancement when the defendant's testimony that he had not participated in methamphetamine manufacturing conflicted with other witnesses' testimony). "Although § 3C1.1 is not intended to punish a defendant for testifying, a defendant who commits perjury is subject to this

-18-

enhancement." ***United States v. Simms***, 285 F.3d 1098, 1100 (8th Cir. 2002) (internal quotations and citations omitted).

Dr. Boesen objects that the district court imposed the § 3C1.1 enhancement solely because the jury found him guilty of the charged crimes, not because he lied under oath. This court's review of the record does not support Dr. Boesen's contention.

Sentencing Dr. Boesen, the district court identified a total of five statements "that, on their face, appear inconsistent with the verdict." The court found that four of these statements were general denials of guilt and thus did not constitute perjury. The court based its imposition of the § 3C1.1 enhancement solely on Dr. Boesen's testimony to the jury that he performed all of the procedures that he billed for. The government presented significant evidence on this issue, demonstrating that Dr. Boesen's testimony was knowingly and wilfully false. "While it is preferable for the district court to address each element of the alleged perjury in a separate and clear finding, the determination is sufficient if 'the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.'" ***United States v. Flores***, 362 F.3d 1030, 1037 (8th Cir. 2004), *quoting **Dunnigan***, 507 U.S. at 95.

## III.

In the cross-appeal, the government seeks reversal of the judgment of acquittal on the conspiracy count. The court granted Dr. Boesen's motion for acquittal on the conspiracy count at the conclusion of his two-week trial, when it also granted co-defendant James Boesen's motion for a judgment of acquittal on all counts. This court reversed the acquittal of James Boesen in an earlier appeal, ***United States v. Boesen***, 491 F.3d 852 (8th Cir. 2007), expressly reserving consideration of Dr. Boesen's acquittal on the conspiracy count. ***Id.*** at 853 n.1.

When a district court grants a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), this court reviews "the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008) (internal citation omitted). "The standard of review is very strict, and we will reverse a conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt." *United States v. Garcia*, 521 F.3d 898, 901 (8th Cir. 2008) (internal citation omitted). We now reverse the district court's Rule 29(a) ruling, finding that the jury's conviction of Dr. Boesen for conspiracy was supported by sufficient evidence.

"To establish a conspiracy, the government must prove: (1) the existence of an agreement among two or more people to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) that the defendant knowingly joined and participated in the agreement." *United States v. Crumley*, 528 F.3d 1053, 1066 (8th Cir. 2008) (internal quotations and citation omitted). An agreement forming a conspiracy may be either explicit or implicit. *Id.*

The jury's conviction of Dr. Boesen for conspiracy was rationally supported by the government's evidence. The jury could infer that Dr. Boesen and his brother James entered into an implicit agreement to defraud insurers when billing for otolaryngological procedures and tests. Evidence showed that Dr. Boesen submitted fraudulent bills in furtherance of this conspiracy, enabling the jury to find that he had knowledge of and participated in these illegal acts. Viewing the evidence in the light most favorable to the jury's verdict, the district court erred when it granted Dr. Boesen's Rule 29(a) motion.

## IV.

This court affirms the judgment of the district court in part, reverses in part, and remands the case for proceedings consistent with this opinion.

_____